**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**JOMY STERLING,**

        **Plaintiff,**

v.                                **Case No: 6:21-cv-723-PGB-EJK**

**JANE DOE,**

        **Defendant.**

_____/

**ORDER**

This cause comes before the Court on Defendant's Objection (Doc. 17 (the "**Objection**")) to Magistrate Judge Embry J. Kidd's Order Denying (Doc. 16 (the "**Denial**")) Defendant's Motion to Quash Third Party Subpoenas (Doc. 11 (the "**Motion to Quash**")). Upon consideration, the Objection is due to be overruled.

**I.  BACKGROUND**

Plaintiff and Defendant are content creators on the online platform Roblox from which they each derive their principal source of income. (Doc. 17, p. 2). Both also maintain Twitter accounts where they promote their Roblox content and interact with other Roblox users. (*Id.*). Defendant Jane Doe has always chosen to stay anonymous online, using the name "Beeism" on both platforms. (*Id.* at p. 3). Her anonymity is the lynchpin of the current dispute.

Plaintiff brought this action alleging that Defendant twice sent out defamatory Tweets regarding Plaintiff which subsequently damaged her

reputation, business, and relationships. (Doc. 1, pp. 3–7). Defendant's first Tweet in question stated as follows:

> & yea, when some1 in her mid 30's invites a 15 [year-old] she met on roblox to her house for overnite visits OF COURSE I'M GONNA SAY SOMETHIN. never called [Plaintiff] a pedo[phile] but I 100% stand by the fact someone in their 30's should not invite minors to their house for overnite disneyworld trips

(Doc. 11, p. 7) (sic). Plaintiff asserts this Tweet is defamatory because it accuses her of engaging in unlawful conduct with minors or that she is a pedophile. (Doc. 1, ¶ 13–15). In addition, Plaintiff asserts it is false that the fifteen-year-old was someone she met only on Roblox. (*Id.* ¶ 15). Defendant's second Tweet in question stated:

> there was a wellness check for [Plaintiff's husband] cuz no one had seen or heard from him since his meltdown, and we're allll witnesses to [Plaintiff's] behavior the last few weeks. The chick [that is, Plaintiff] is coming undone. [Plaintiff's husband] didn't get swatted, a cop knocked on his door to make sure he was alive

(Doc. 11, p. 9) (sic). Plaintiff asserts this Tweet is defamatory because it was untrue that "no one had seen or heard from [Plaintiff's husband] since his meltdown" and the phrases "coming undone" and "make sure he is alive" falsely imply that Plaintiff harms her husband. (Doc. 1, ¶ 19). Plaintiff further contends that Defendant "did not ask any of [the] friends or co-workers" of Plaintiff's husband "about his well-being prior to publishing the [] Tweet" and so would have no way of knowing if the assertions were true. (*Id.* ¶ 23).

Plaintiff moved for and was granted leave, without opposition, to serve third-party subpoenas on Roblox Corporation and Twitter to obtain information

that will enable Plaintiff to name and serve Defendant. (Docs. 9, 10). In the Order granting leave for Plaintiff to serve third-party subpoenas, Magistrate Judge Kidd stated that, "[g]ood cause may exist to identify a Doe defendant, so that the plaintiff may serve process and the case can proceed, when the plaintiff can demonstrate that she has pled a prima face case" and that "[h]ere, Plaintiff alleges claims for defamation and trade libel by virtue of [Defendant's publication of] Tweets about Plaintiff that Plaintiff claims are false and have caused her harm." (Doc. 10, pp. 1–2).

Defendant filed the instant Motion to Quash the subpoenas ten days later. (Doc. 11). Magistrate Judge Kidd denied the Motion to Quash, relying in part on his previous finding that Plaintiff stated a prima facie case of defamation. (Doc. 16, pp. 3–4). Magistrate Judge Kidd stated that:

> Defendant moves to quash the subpoenas, or obtain a protective order, on the . . . grounds [that] Plaintiff fails to state a cause of action [and for two other reasons]. The Court previously found that Plaintiff pled a prima facie case when it granted leave to issue the third-party subpoenas. Therefore, the Court will restrict its analysis to Defendant's second and third arguments.

(*Id.*) (citations omitted).

Defendant now objects to Magistrate Judge Kidd's Denial of her Motion to Quash under Federal Rule of Civil Procedure 72(a). (Doc. 17). Plaintiff responded in opposition, making the Objection ripe to be ruled upon. (Doc. 20).

3

## II. STANDARD OF REVIEW

Rule 72(a) authorizes a district court reviewing a litigant's objection to a magistrate judge's non-dispositive order to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); *see also Howard v. Hartford Life & Accident Ins. Co.*, 769 F. Supp. 2d 1366, 1372 (M.D. Fla. 2011). "Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tempay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260 (M.D. Fla. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1326–27 (M.D. Fla. 2011)). All told, "in issuing non-dispositive orders related to discovery" a magistrate judge "is afforded broad discretion." *Gulfside, Inc. v. Lexington Ins. Co.*, No. 2:19-cv-851, 2021 U.S. Dist. LEXIS 90550, at *4 (M.D. Fla. May 12, 2021) (internal citations omitted).

## III. DISCUSSION

The Court finds that Magistrate Judge Kidd's Denial of the Motion to Quash is not contrary to law nor clearly erroneous. While Defendant cites to a plethora of *non-binding* authorities to support her argument, Magistrate Judge Kidd did not misapply or fail to apply any relevant *binding* statutes, case law, or rules of

4

procedure—other alternative approaches notwithstanding. After all, "orders from other districts have no precedential value." *Gulfside*, 2021 U.S. Dist. LEXIS 90550, at *7. In addition, while Magistrate Judge Kidd may not have addressed each of Defendant's arguments with the detail Defendant might prefer, the Court cannot say that Magistrate Judge Kidd's decisions were clearly erroneous given the broad discretion which he is afforded when ruling on non-dispositive motions.

### A. Prima Facie Case

Defendant argues that Magistrate Judge Kidd did not correctly apply Florida defamation law in finding Plaintiff stated a prima facie case. To state a prima facie case of defamation in Florida requires defamatory publication of a statement made with either knowledge of its falsity, reckless disregard of its falsity if the matter concerns a public official, or negligence as to its falsity if the matter concerns a private person that causes actual damages. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (applying Florida defamation law). "True statements, statements that are not readily capable of being proven false, and statements of pure opinion" are not actionable as defamation. *Id.* (citing *Blake v. Giustibelli*, 182 So. 3d 881, 884 n.1 (Fla. 4th DCA 2016) ("Statements of pure opinion are not actionable.")). Moreover, "[u]nder Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Id.* (citing *From v. Tallahassee Democrat*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981)). Whether a statement is an opinion or a factual assertion

5

susceptible to defamatory interpretation is a question of law. *Id.* at 1262–63 (citing *From*, 400 So. 2d at 56—57).

Magistrate Judge Kidd covered these elements in his order granting Plaintiff leave to serve the subpoenas, stating that the "claims for defamation and trade libel by virtue of Doe's publishing Tweets about Plaintiff that Plaintiff claims are false and have caused her harm." (Doc. 10, p. 2). Whether every part of Plaintiff's complaint will ultimately succeed is not at issue here; Plaintiff need only have shown that at least one of her claims was viable on its face—just as Magistrate Judge Kidd ruled—to move forward with the necessary steps to serve process on Defendant.

Granted, Magistrate Judge Kidd did not address Plaintiff's failure to note the allegedly defamatory statement in which she is accusing Defendant of being a pedophile expressly states that she "never called [Plaintiff] a [pedophile]." (Doc. 17, pp. 7–9). Even when the pedophilia allegation is removed from the equation, the remaining accusation that Defendant invited a minor she met on Roblox to her home could meet the standard for a prima facie case of defamation because it is false according to Plaintiff's complaint. (Doc. 1, ¶¶ 13–17). Of course, Defendant's opinion that people should not invite minors to their homes for overnight stays or Disney trips is not actionable as a matter of law, but it was not clearly erroneous for Magistrate Judge Kidd to interpret at least part of the statement as facially defamatory at this stage in the proceedings.

The same is true for the second Tweet. Undoubtedly, at least part of the Tweet is pure opinion, but the factual assertion that no one had seen or heard from Plaintiff's husband in some time is facially false as alleged. (*Id.* ¶ 19). Moreover, the Tweet as a whole is at least susceptible to the defamatory insinuation that Plaintiff was in some way responsible for her husband's state of non-communication. At a minimum, therefore, Magistrate Judge Kidd did not clearly err or rule contrary to law when he found that at least part of the allegations in the complaint pled a prima facie claim of defamation.

### B.     Standard of Review for Seeking Identifying Information

Second, Defendant argues that, because Magistrate Judge Kidd did not consider Defendant's evidentiary showings in determining the viability of the case, the denial of the Motion to Quash was contrary to law or clearly erroneous. (Doc. 17, pp. 4—10). Defendant's argument, however, rests on the mistaken premise that Magistrate Judge Kidd was obligated to view Plaintiff's allegations in light of Defendant's evidentiary showings when weighing the viability of the claims against Defendant's First Amendment interests in remaining anonymous online. In effect, Defendant argues that Magistrate Judge Kidd should have subjected the Motion to Quash to a standard of review akin to summary judgment by considering evidence beyond the four-corners of Plaintiff's complaint. But no Eleventh Circuit caselaw requires such an exacting standard, even in view of the First Amendment interests at stake in the case. The potentially applicable cases which Defendant marshals for support were decided in the Northern District of California, the Northern District

7

of Florida, and the District of Columbia's Court of Appeals (notably, not the United States Court of Appeals for the District of Columbia Circuit).[1] In contrast, Magistrate Judge Kidd's approach is consistent with the Court's past rulings on motions to dismiss defamation claims. *See Music with Mar, LLC v. Froggy's Friends*, No. 8:20-cv-1091, 2020 U.S. Dist. LEXIS 244486, at *6—12 (M.D. Fla. Dec. 30, 2020) (limiting the scope of review to the four corners of the complaint to find that a statement was a mixed expression of opinion and fact that was not constitutionally protected). Since Magistrate Judge Kidd was not required to apply a standard of review that took into account Defendant's evidentiary showings, he did enough when he determined that Plaintiff stated a prima facie case.

### C.    First Amendment Interest in Anonymity

Third, Magistrate Judge Kidd acknowledged and took into account Defendant's First Amendment interests in remaining anonymous. (Doc. 16, pp. 6–7). In so doing, he correctly noted that Defendant's First Amendment interest is not absolute when he weighed it against the viability of Plaintiff's defamation case. (*Id.*). While some courts require a more searching review, this approach is not universal; more importantly, Defendant's preferred approach is not controlling in this jurisdiction as detailed *supra*. As a result, Magistrate Judge Kidd acted appropriately in addressing Defendant's concerns regarding potential abuse of her

---

[1] *COR Clearing, Ltd. Liab. Co. v. Investorshub.com, Inc.*, No. 4:16-mc-13, 2016 U.S. Dist. LEXIS 115810, at *5–7 (N.D. Fla. May 11, 2016); *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010); *Solers, Inc. v. Doe*, 977 A.2d 941, 951 (D.C. 2009).

identity by placing constraints on the order to serve the third-party subpoenas.[2] (Doc. 10, p. 2 ("Any information disclosed to Plaintiff in response to the subpoenas may be used by her solely for the purpose of prosecuting this lawsuit.")).

At bottom, the Court is not left with a "definite and firm conviction" that Magistrate Judge Kidd incorrectly balanced the viability of Plaintiff's case when weighing Defendant's First Amendment right to speak anonymously. *Tempay*, 929 F. Supp. 2d at 1260; (Doc. 16, p. 7).

### D.    Rule 45 & Anti-SLAPP Statutes

Magistrate Judge Kidd also did not commit clear error or misapply controlling law when he found that Florida and California anti-SLAPP provisions were inapplicable to the case.[3] Magistrate Judge Kidd correctly noted that in order for Defendant to have standing to challenge the subpoenas directed to a third-party under Rule 45, Defendant must show the information sought involves matters of personal right and privacy. (Doc. 16, p. 4). Defendant believes that either Florida's or California's anti-SLAPP provision provides such a right. (Doc. 17, p. 10). Magistrate Judge Kidd also correctly pointed out, however, that numerous courts, including the Eleventh Circuit, have "declined to apply anti-SLAPP statutes like California's because they increase a plaintiff's burden to overcome pretrial

---

[2]   Defendant may also attempt to seek further relief to temporarily protect her anonymity in filings in this Court after her identifying information is obtained via subpoena by seeking a protective order or an order to seal under the appropriate Federal Rules or Local Rules.

[3]   Many states have statutory prohibitions on strategic lawsuits against public participation ("**SLAPPs**").

9

dismissal, and thus conflict with [certain Federal Rules]." (*Id.* (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018) and *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274-75 (9th Cir. 2013)). In other words, numerous courts have found that the *Erie* doctrine forecloses application of similar anti-SLAPP statutes because they increase a plaintiff's burden relative to an on point Federal Rule of Civil Procedure. In objecting, Defendant hopefully cites to *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017) and *Parekh v. CBS Corp.*, 820 F. App'x 827 (11th Cir. 2020)[4] as instances where the Eleventh Circuit upheld application of California or Florida anti-SLAPP laws by a district court sitting in diversity jurisdiction. Defendant omits, however, that both the *Tobinick* and *Parekh* courts only affirmed this application because they determined the plaintiffs there had forfeited their right to challenge the anti-SLAPP law's applications under an *Erie* theory at the district court level. *Tobinick*, 848 F.3d at 944 ("The Tobinick Appellants did not raise the Erie claim" and "therefore waived the issue"); *Parekh*, 820 F. App'x at 836 ("Parekh argues, for the first time on appeal, that Florida's anti-SLAPP statute should not be applied in federal court. He forfeited this argument, however, by not raising it before the district court.") No such forfeiture exists here.

Defendant also points out that Magistrate Judge Kidd's approach is not universal, and some federal courts have applied state anti-SLAPP provisions when

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

exercising diversity jurisdiction. *See Anderson v. Best Buy Stores L.P.*, No. 5:20-cv-41-Oc-30, 2020 WL 5122781 (M.D. Fla. July 28, 2020) (applying the fee provision of Florida's anti-SLAPP statute), *adopted in full by Anderson v. Coupons in the News*, No. 5:20-cv-41-Oc-30, 2020 WL 5106676 (M.D. Fla. Aug. 31, 2020); *Ener v. Duckenfield*, No. 20-cv-22886, 2020 WL 6373419 (S.D. Fla. Sep. 28, 2020) (applying fees provision of Florida's anti-SLAPP statute); *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1322–24 (S.D. Fla. 2020) (applying fee-shifting provision of Florida's anti-SLAPP laws because it did not conflict with any Federal Rules of Civil Procedure). But Magistrate Judge Kidd need not have followed the lead of these courts because, as the *Bongino* court itself explains, the fee-shifting provision of anti-SLAPP laws is obviously different than the pretrial dismissal anti-SLAPP provisions which conflict with and "'answer the same question'" as the Federal Rules. 477 F. Supp. 3d at 1323 (citing *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, (2010)).

Defendant further attempts to navigate away from conflicting precedent that counsels in favor of Magistrate Judge Kidd's approach by pointing out that no Court has yet ruled on whether CAL. CODE CIV. PROC. § 1987.1, the California anti-SLAPP provision which Defendant attempts to invoke, conflicts with the Federal Rules. But this is of no moment. Defendant brings forth no argument that could meet her burden to show Magistrate Judge Kidd clearly erred or did not apply controlling law when he followed the *Erie* logic which eminent courts have applied in ruling on substantially similar state anti-SLAPP laws. *E.g., Abbas v. Foreign*

11

*Policy Group, LLC*, 783 F.3d 1328, 1331 (D.C. Cir. 2015) (Kavanaugh, J.) (holding that the District of Columbia's anti-SLAPP Act had no application in diversity cases because the Federal Rules of Civil Procedure already detailed how a court may dismiss a claim pretrial).

### E. Rule 26 Annoyance, Harassment, and Oppression

Magistrate Judge Kidd found Defendant's worry that Plaintiff will utilize the identifying information obtained from the subpoenas to harass and threaten Defendant to be insufficiently supported by factual allegations. (Doc. 16, pp. 7–8). Magistrate Judge Kidd correctly noted that, under Rule 26(c), obtaining a protective order from a subpoena necessitates a showing of good cause, which requires the moving party to put forward particular and specific demonstrations of fact rather than conclusory statements. *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005); FED. R. CIV. P. 26(c); (*id.*). Magistrate Judge Kidd, however, found that Defendant made no such particular and specific showing. (Doc. 16, p. 8). In her objection, Defendant recycles her *ipse dixit* assertions that Defendant will be in danger should she lose her right to anonymity because the underlying claims will likely fail on the merits. (Doc. 17, p. 17). Yet Magistrate Judge Kidd was not required to resolve this matter in Defendant's favor because Defendant would not be able to regain her anonymity if Defendant succeeds in defending the case; this assumes that Defendant will prevail on the merits, which is not yet clear, particularly when Magistrate Judge Kidd was not obligated to consider Defendant's evidentiary showing. Consequently, it was

not clearly erroneous or contrary to law for him to conclude these assertions must give way in the face of the prima facie defamation claim. Most importantly, Defendant put forward nothing new beyond conjecture to substantiate a likelihood that Plaintiff will abuse this identifying information given the conditions Magistrate Judge Kidd already placed upon its use.

### IV.   CONCLUSION

For the above reasons, it is **ORDERED** and **ADJUDGED** that Defendant's Objection (Doc. 17) to Magistrate Judge Kidd's Order is **OVERRULED**, and the Denial (Doc. 16) of Defendant's Motion to Quash (Doc. 11) is **AFFIRMED**. The parties are **DIRECTED** to timely comply with Magistrate Judge Kidd's Order (Doc. 10).

**DONE AND ORDERED** in Orlando, Florida on February 2, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

13