**Exhibit B**

**[Doc 151] Order Entered in *Starline Media v. Sterling***

**Case No. 6:20-cv-01210-GAP-GJK**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

STARLINE MEDIA, INC. and DAVID
NDALAMBA,

              Plaintiffs,

v.                                       Case No:   6:20-cv-1210-GAP-GJK

ELISHA TRICE and
JOMY STERLING d/b/a STAR
STATUS GROUP,

              Defendants.

_____

## ORDER

This matter is before the Court after a hearing on its Order to Show Cause
(Doc. 132) and Motion for Sanctions (Doc. 141) filed by Plaintiffs and
Counterclaim Defendant Tyler Gnass. In ruling on this Motion, the Court also
considered Defendant Jomy Sterling's Response to the Order to Show Cause (Doc.
134), her Response to the Motion for Sanctions (Doc. 146), and oral argument at a
hearing held on February 9, 2022.

## I.    Background

This case emerges from an online gaming platform called Roblox. Both
Plaintiff David Ndalamba ("Ndalamba") and Defendant Jomy Sterling

("Sterling")[1] operate games on the Roblox platform. Ndalamba and his company, Starline Media, Inc., have sued Sterling, claiming that she appropriated his copyrighted source code and used it in her game. He also claims that Sterling tortiously interfered with a non-disclosure agreement ("NDA") that Ndalamba had entered into with Defendant Elisha Trice. Sterling asserts a counterclaim for defamation against Ndalamba and her former employee, Tyler Gnass ("Gnass").[2]

This matter arises from circumstances surrounding Ndalamba's discovery obligations with respect to certain electronic files containing Roblox code (hereinafter referred to as the "Place Files" or ".rbxl files"). On July 1, 2021, Sterling filed a motion to compel Ndalamba to produce the Place Files (Doc. 57), and, on August 30, 2021, the Court granted that motion in part and ordered Ndalamba to produce the Place Files by September 7, 2021 (Doc. 63). At that time, Plaintiffs were represented by Attorney Louis Gigliotti ("Gigliotti"), who had experienced a personal tragedy that affected his work product.

---

[1] Many filings in this case were labeled as being made by both Sterling and Star Status Group. At the February 9, 2022, hearing, the parties clarified that Sterling and Star Status Group are one entity. Given this clarification, the Court simply refers to those filings as having been made by Sterling alone.

[2] Because they are represented by the same attorney and they file documents collectively in this case, the Court hereinafter collectively refers to Gnass, Ndalamba, and Starline Media, Inc. as "Plaintiffs."

On September 14, 2021, one week late, Gigliotti emailed Sterling's counsel a zip file containing PDFs of the Place Files. *See* Doc. 141-1 ¶¶ 3–4. Three days after receiving those documents, Sterling filed a Motion to Strike materials submitted in Plaintiffs' response to Sterling's Motion for Summary Judgment. Doc. 68. In that motion, Sterling asked the Court to exclude any evidence referencing the Place Files. *Id.* at 11–12. In support of this argument, Sterling represented that she never received the Place Files, and made no mention of the September 14th email to Keough attaching those documents. *Id.* at 12. She represented to the Court that she "never had the opportunity to see the content of these files." *Id.*

In response to the Motion to Strike, among other filings, Plaintiffs' new counsel brought to the Court's attention that Gigliotti was the victim of a ransomware attack in October that destroyed a significant portion of his electronic records for this case, including emails exchanged between counsel and documents produced in discovery. *See* Doc. 84. In their response, Plaintiffs stated that on August 30, 2021, Ndalamba gave Gigliotti the Place Files to produce to Sterling. *Id.* at 18. Plaintiffs advised that the destruction of Gigliotti's records "ma[de] it impossible for Plaintiffs and Gnass to conduct the forensic analysis necessary to refute or deny the claims that documents were not produced directly from their former counsel for Sterling." *Id.* Accordingly, Court granted the motion to strike with respect to testimony regarding the Place Files. *See* Doc. 97 at 9–10.

On October 22, 2021, Plaintiffs also filed a motion to amend the Case Management and Scheduling Order seeking deadline extensions to remedy setbacks caused by the ransomware attack and certain oversights by Gigliotti. Doc. 83. Plaintiffs again advised that the attack destroyed Gigliotti's emails and case records and that the only way to recover these would be for the Court to reopen discovery. *Id.* at 9. In response, Sterling advised that with respect to those items, it was unnecessary to reopen discovery because she had "already offered to provide successor counsel with such emails and documents in the event successor counsel needs them to prepare for upcoming pre-trial and trial activities . . . ." Doc. 88 at 2. Considering the issue moot, the Court denied the motion. *See* Doc. 90.

In December 2021, the parties identified concerns surrounding the Place Files and the lost communications between Gigliotti and Defendants' counsel, Shaun Keough ("Keough"). On December 13, 2021, Plaintiffs filed a Motion for Extension of Discovery Deadline for the Limited Purpose of Recovering Documents being Withheld by Defendants' Counsel. Doc. 102. They alleged that notwithstanding his prior representation, Keough was withholding communications and documents that he had exchanged with Gigliotti. *Id.* at 7. And Plaintiffs advised that Gigliotti confirmed that he had emailed the Place Files to Keough on September 14, 2021, and that Keough ignored a request to turn over emails sent after September 7, 2021. *Id.* at 7–8.

In response to this Motion on December 24, 2021, Keough stated in a declaration under penalty of perjury that, to the best of his knowledge, "Mr. Ndalamba has not provided Ms. Sterling or her counsel any place files, including 'royalehigh_1_940838533.rbxl,' at any time. Not on or before September 7, 2021, not on September 14, 2021, and not on October 1, 2021." Doc. 118-1 ¶ 3. He further stated that "[t]o this day, Ms. Sterling has yet to receive the place files from Mr. Ndalamba." *Id.* ¶ 5. Additionally, on December 17, 2021, Sterling filed a motion in limine to exclude the Place Files on the basis that Plaintiff failed to produce those files "on or before September 7, 2021." Doc. 106 at 6.

In light of this dispute, the Court set a telephonic hearing on January 10, 2022. In that hearing, Keough conceded that he had not provided Plaintiffs' counsel with all the emails between him and Gigliotti. Doc. 137 at 9:19–10:10. Accordingly, the Court ordered Keough to provide Plaintiffs with all written communications and attachments between him and Gigliotti. Doc. 131. The Court also ordered Sterling and Keough to show cause as to why sanctions should not be imposed for misrepresenting Sterling's willingness to provide those communications in response to the motion to amend the case management order. Doc. 132.

On January 25, 2022, Plaintiffs filed a Motion for Sanctions. Doc. 141. In that Motion, Plaintiffs advised that Keough had turned over the remainder of the

missing communications, including the September 14, 2021, email containing PDF copies of the Place Files. Now, four months after filing the motion to strike, Keough has confirmed that he did in fact receive that email with the Place Files. *See* Docs. 134, 146, & 147. The Court held an in-person hearing on February 9, 2022, on the Parties' Motions in Limine, the Motion for Sanctions, and the Court's Order to Show Cause. The Court now considers whether Sterling's counsel should be sanctioned pursuant to 28 U.S.C. § 1927 and the inherent powers of the Court.

## II. Discussion

The Court considers whether sanctions against Sterling's counsel are warranted based on counsel's withholding of emails from Plaintiffs' counsel, and whether sanctions are also warranted because Sterling's counsel repeatedly misrepresented facts regarding the production of the Place Files. Based on the comprehensive briefing on these issues and the statements of counsel for both sides made in open court, there is no dispute that Gigliotti emailed the Place Files to Keough on September 14, 2021. Thus, the question here is whether the statements made by Sterling's counsel to the contrary are sanctionable.

The Court first considers whether it is appropriate to sanction Sterling's counsel pursuant to its inherent powers. "Courts have the inherent power to police those appearing before them." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S.

32, 46 (1991)). "A court may exercise this power 'to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)). A party moving for sanctions pursuant to the Court's inherent powers "must show *subjective* bad faith." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (emphasis in original) (citations omitted). "This standard can be met either (1) with direct evidence of the attorney's subjective bad faith or (2) with evidence of conduct 'so egregious that it could only be committed in bad faith.'" *Id.* (quoting *Purchasing Power*, 851 F.3d at 1224–25).

The Court finds that Sterling's counsel, Keough, acted in bad faith. Gigliotti emailed the Place Files to Keough on September 14, 2021. Three days later, Keough filed a motion to strike, wherein he represented that Plaintiffs had failed to produce the Place Files. Keough argues that this representation was accurate because the production was late, and the files were saved in an improper format. But the motion to strike made no mention of these issues and led the Court and Plaintiffs to believe that Gigliotti had failed to produce the Place Files. At the time he made that representation, Sterling's counsel knew that representation was not true.

Keough's actions thereafter establish not only that his misrepresentation was untruthful, but that it was subjectively done in bad faith. To begin, Plaintiffs'

new counsel advised in response to the motion to strike that he was unable to verify whether the Place Files were produced because Gigliotti had lost his records in a ransomware attack. He also advised in his motion to amend the Case Management and Scheduling Order that the loss of those and other records had hamstrung his ability to prosecute this lawsuit. Keough represented that he would be willing to provide any documents or communications that Plaintiffs' counsel needed to prepare his case. However, once the Court issued an order that made no mention of these emails, Keough reneged on his offer.[3]

In his response to the Court's order to show cause, Keough advised that he believed he held to his offer because he had only offered to provide documents that were destroyed "**and** that successor counsel needed to prepare for pre-trial and trial activities." Doc. 134 at 2 (emphasis in original). In other words, Keough believed that under the terms of his offer, it was up to him to decide what Plaintiffs' counsel needed to prepare for trial, not the other way around. This interpretation is untenable and plainly opportunistic on Keough's part. Plaintiffs' counsel specifically argued that he could not adequately respond to the motion to strike without Gigliotti's records.[4] Despite this disadvantage, Sterling's counsel

---

[3] Ostensibly, Keough's motive in withholding the September 14th email was to prevent Plaintiffs' counsel from learning that the Place Files had indeed been produced.

[4] Clearly, the September 14th email was necessary for Plaintiffs' counsel to prepare for trial.

made the decision to withhold the September 14th email. This conduct, along with Keough's misrepresentation, is sufficient to establish bad faith.

But the story does not end there. In a later motion, Plaintiffs' counsel advised that he had learned of the existence of the September 14 email and had been unable to obtain it from Keough. In response, Keough personally submitted a sworn affidavit to the Court wherein he stated: "To the best of my knowledge I have not received any place files, including 'royalehigh_1_940838533.rbxl,' at any time. Not on or before September 7, 2021, not on September 14, 2021, and not on October 1, 2021." Doc. 118-1 ¶ 3. He further stated that he provided Plaintiffs' counsel with "[a]ll of the documents that Mr. Ndalamba and Mr. Gnass produced in this case that I actually possess." *Id.* ¶ 9.a.

These statements are patently false. When directly challenged on the issue, Keough unequivocally stated that he had not received *any* Place Files. It was not until the Court directly ordered Keough to turn over his communications with Plaintiffs' former counsel that he finally admitted to the existence of the September 14th email.

Keough's attempts to justify his behavior by pointing to the lateness of the disclosure and the format of the files are without merit. If Keough had legitimate concerns about the one-week delay in production of these documents or their format, he should have raised them months ago. Instead, he decided to

misrepresent facts to the Court and conceal the existence of these disadvantageous

documents from the Court and Plaintiffs' counsel. This conduct by an officer of

the court constitutes subjective bad faith. Sanctions are therefore warranted

pursuant to the Court's inherent powers. *See In re Engle Cases*, 283 F. Supp. 3d

1174, 1244–45 (M.D. Fla. 2017) (clear and convincing evidence that attorney

"recklessly or knowingly made misrepresentations" to the court justified sanctions

under its inherent authority).

Plaintiffs also seek sanctions pursuant to 28 U.S.C. § 1927, which states that:

> Any attorney or other person admitted to conduct cases
> in any court of the United States or any Territory thereof
> who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the
> court to satisfy personally the excess costs, expenses, and
> attorneys' fees reasonably incurred because of such
> conduct.

The Eleventh Circuit has held that "an attorney multiplies proceedings

'unreasonably and vexatiously' within the meaning of the statute only when the

attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong &*

*Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting *Avirgan*

*v. Hull*, 032 F.2d 1572, 1582 (11th Cir. 1991)). A party moving for sanctions under §

1927 "must show *objective* bad faith," meaning that "an attorney acted 'knowingly

or recklessly.'" *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (emphasis in

original) (quotations omitted). The moving party must "show that the other side

engaged in behavior that 'grossly deviates from reasonable conduct.'" *Id.* (citing *Amlong*, 500 F.3d at 1241).

The Court's finding of subjective bad faith supports a finding of objective bad faith as well. *See Hyde*, 962 F.3d at 1310 (evidence of subjective bad faith is pertinent to the objective bad faith inquiry "because an act done in subjective bad faith is also more likely to be objectively unreasonable."). Keough's position that the Place Files were not produced because they were late and not in a particular format is objectively unreasonable. He had no reasonable basis for making a sworn representation that the Place Files were not produced at any point in this case. The Court finds that this conduct was vexatious and unreasonable. *See Bernal v. All Am Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1332 (S.D. Fla. 2007) (attorney acted in bad faith and subject to § 1927 sanctions where he filed an affidavit without an adequate basis for believing its accuracy). Further, this conduct clearly multiplied the proceedings. The Court has dealt with this issue across several motions since September 2021. The Court has had to issue an Order to Show Cause and has held two separate hearings to deal with Keough's misrepresentations. Therefore, sanctions pursuant to § 1927 are appropriate.

## III.    Conclusion

Accordingly, it is hereby **ORDERED** that

1.  The Motion for Sanctions (Doc. 141) filed by Plaintiffs David Ndalamba and Starline Media, Inc., and Counterclaim Defendant Tyler Gnass, is **GRANTED**.

2.  The Court's Order to Show Cause (Doc. 132) is **CONFIRMED** because Keough's conduct warrants the imposition of sanctions.

3.  Defendant's attorney, Shaun Patrick Keough, is hereby ordered to pay costs and reasonable attorneys' fees[5] incurred by Plaintiffs David Ndalamba and Starline Media, Inc., and Counterclaim Defendant Tyler Gnass in litigating the following issues:

    a.  Defendant's Motion to Strike (Doc. 68);

    b.  Plaintiffs' Motion for Extension of Time to Complete Discovery (Doc. 102);

    c.  Defendant's Motion in Limine (Doc. 106);

    d.  Plaintiffs' Motion for Sanctions (Doc. 141); and

---

[5] Sanction pursuant to § 1927 are limited to "costs, expenses, and attorneys' fees reasonably incurred because of [the sanctionable] conduct." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1297 (11th Cir. 2010) (quotation omitted); *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) ("a district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers").

   e. The Court's Order to Show Cause (Doc. 132).

  4. The parties shall meet and confer over the appropriate costs and fees. If the parties cannot resolve this issue, Plaintiffs shall file a motion for costs and attorneys' fees within 14 days of the date of this order.

  **DONE** and **ORDERED** in Chambers, Orlando, Florida on February 14, 2022.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party