UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOMY STERLING,

        **Plaintiff,**

v.                                          Case No: 6:21-cv-723-PGB-UAM

MADILYNN DE LA ROSA and
JANELLE FRISCH,

        **Defendants.**
_____/

## ORDER

This cause comes before the Court on the following filings:

1. Defendant Madilynn De La Rosa's ("**Defendant De La Rosa**") Motion to Dismiss (Doc. 106), Plaintiff Jomy Sterling's ("**Plaintiff**") response in opposition (Doc. 110), and Defendant De La Rosa's reply. (Doc. 115).[1]

2. Defendant Janelle Frisch's ("**Defendant Frisch**") Motion to Dismiss (Doc. 107), and Plaintiff's response in opposition (Doc. 111).

3. Defendant Frisch's Motion to Strike (Doc. 108), and Plaintiff's response in opposition (Doc. 109).

4. Defendant Frisch's Motion for Sanctions (Doc. 117), and Plaintiff's response in opposition (Doc. 118).

---

[1] The Court granted Defendant De La Rosa leave to file a reply. (*See* Docs. 112, 114).

Upon due consideration, the Motions to Dismiss are granted, the Motion to Strike is denied as moot, and the Motion for Sanctions is denied.

## I. BACKGROUND[2]

### A. Factual Background

This case flows from allegedly defamatory statements made online. (Doc. 105 (the "**Fourth Amended Complaint**")). Plaintiff Jomy Sterling—also known as the online persona "Pixelated Candy"—is a video game developer, publisher, and personality on Roblox, an online social network and community. (*Id.* ¶¶ 9–10). Plaintiff alleges that Defendant De La Rosa and Defendant Frisch acted in concert to defame Plaintiff through the online persona "Beeism." (*Id.* ¶ 1).

At issue here are three Tweets that Beeism published on Twitter:[3]

> & yea, when some1 in her mid 30's invites a 15 [year-old] she met on roblox to her house for overnite visits OF COURSE I'M GONNA SAY SOMETHIN. never called her a pedo but I 100% stand by the fact someone in their 30's should not invite minors to their house for overnite disneyworld trips[.]

(*See* Doc. 105-3 (the "**Pedophile Tweet**")).

> there was a wellness check for tay cuz no one had seen or heard from him since his meltdown, and we're allll witnesses to pix's behavior the last few weeks. the chick is coming undone. tay didn't get swatted, a cop knocked on his door to make sure he was alive[.]

(*See* Doc. 105-5 (the "**Wellness Tweet**")).

---

[2]  This account of the facts comes from Plaintiff's Fourth Amended Complaint. (Doc. 105). The Court accepts well-pled factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

[3]  Since this case was initiated, Twitter has rebranded to "X." (*See* Doc. 107, p. 1 n.1). Nonetheless, herein, the Court refers to the platform as "Twitter."

> if you need me to go back to 2015 and dig out those conversations we had on skype about her I can, they prove you were underage when she pursued you & continued to lie throughout the duration of your relationship. you married her under false pretenses. I also want you to know...[.]

(*See* Doc. 105-2 (the "**Underage Tweet**")).

Plaintiff alleges that all three Tweets are about her, and that the Wellness Tweet and Underage Tweet are also about her husband, Taylor Sterling. (Doc. 105, ¶¶ 13, 24, 32). Plaintiff alleges these Tweets have damaged her reputation, business, and relationships, and have caused her emotional pain and suffering. (*Id.* ¶ 35).

Accordingly, for each of these Tweets, Plaintiff asserts a claim for defamation *per se*, defamation *per quod*, and defamation by implication against both Defendants. (*Id.* ¶¶ 36–80). Plaintiff also asserts a claim for conspiracy to commit defamation against both Defendants. (*Id.* ¶¶ 81–83).

**B.     Procedural Background**

Plaintiff initiated this action on April 23, 2021 against a defendant "Jane Doe." (Doc. 1). Eventually, upon belief that Plaintiff had identified the individual behind the Beeism persona, Plaintiff filed an Amended Complaint against Defendant De La Rosa on June 1, 2022. (Doc. 37). Then, after Twitter's response to a third-party subpoena, Plaintiff moved to amend (Doc. 76 (the "**Motion to Amend**")) her complaint to add another individual allegedly associated with the Beeism persona, Defendant Frisch. (Docs. 69, 70). The Court granted Plaintiff's Motion to Amend, and Plaintiff filed a Second Amended Complaint against Defendant De La Rosa and Defendant Frisch on October 17, 2023. (Docs. 80, 83).

Defendants filed their respective Motions to Dismiss, and Plaintiff filed her responses in opposition. (Docs. 88, 91, 93, 94).

The Court dismissed, without prejudice, Plaintiff's Second Amended Complaint as a shotgun pleading because it adopted the allegations of all preceding counts and failed to separate each cause of action. (Doc. 101 (the "**Shotgun Pleading Order**")); *see Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Accordingly, Plaintiff filed a Third Amended Complaint on September 24, 2024. (Doc. 103). Despite the Court's guidance in the Shotgun Pleading Order, Plaintiff again failed to separate each claim for relief into a different count. (Docs. 101, 103, 104). As such, the Court struck the Third Amended Complaint and directed Plaintiff to file another amended complaint. (Doc. 104). On October 2, 2024, Plaintiff filed the Fourth Amended Complaint. (Doc. 105). Defendants now move to dismiss the Fourth Amended Complaint for lack of personal jurisdiction and for failure to state a claim. (Docs. 106, 107). After Plaintiff's responses in opposition, this matter is ripe for review. (Docs. 110, 111).

II. **STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal

4

conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

Furthermore, in ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint" and the attachments thereto which are undisputed and central to the claim. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Austin v. Mod. Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)).[4]

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

## III. DISCUSSION[5]

### A. Personal Jurisdiction

For jurisdictional purposes, Plaintiff alleges that she is a citizen of Florida, Defendant De La Rosa is a citizen of Arizona, and Defendant Frisch is a citizen of California. (Doc. 105, ¶¶ 2–4). Plaintiff alleges the Court has specific jurisdiction over Defendants because they have committed tortious acts in Florida and have availed themselves of this forum. (*Id.* ¶ 6). Regarding Florida's long-arm statute, Defendant De La Rosa argues that it does not apply to her because she is not Beeism, and thus, she did not commit a tortious act.[6] (Doc. 106, pp. 6–8). Defendant Frisch argues that Florida's long-arm statute is not satisfied because Plaintiff fails to state a claim to support Defendant Frisch committed a tortious act in Florida. (Doc. 107, pp. 9–11). Further, both Defendants argue that exercise of personal jurisdiction over them by this Court would not comport with due process. (Doc. 106, p. 8–12; Doc. 107, pp. 10–11).

District courts in the Eleventh Circuit apply a two-prong test to determine whether personal jurisdiction exists over a defendant. *Mut. Serv. Ins. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). The court must first

---

[5] In the Motions to Dismiss, Defendants raise various arguments regarding Plaintiff's failure to state a claim. (*See* Docs. 106, 107). While Plaintiff's claims fail on several grounds, the Court limits its analysis to dispositive arguments concerning the merits of Plaintiff's claims.

[6] Throughout Defendant De La Rosa's Motion to Dismiss and Plaintiff's response thereto, the parties heavily dispute whether Plaintiff has established that Defendant De La Rosa is Beeism. (*See* Docs. 106, 110). The Court need not address this matter because, even assuming Defendant De La Rosa is Beeism, Plaintiff nonetheless fails to state a claim for relief.

6

determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute.⁷ *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If jurisdiction is established under the forum state's long-arm statute, the court must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*; *see also PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 807–08 (11th Cir. 2010) (citations omitted) (explaining that a court must first determine whether Florida's long-arm statute is satisfied before addressing due process because "federal courts are duty bound to avoid a constitutional question if answering the question is unnecessary to the adjudication of the claims at hand")."Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

Florida's long-arm statute affords specific jurisdiction over persons who have "committ[ed] a tortious act within [the] state." FLA. STAT. § 48.193(1)(a)(2). This provision is broadly construed as it permits specific jurisdiction over a non-resident defendant who commits a tort outside of the state that causes injury inside the state. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999). "In Florida, before a court addresses the question of whether specific jurisdiction

---

⁷ In examining this first prong, the district court must construe the state's long-arm statute in the same manner as the state's supreme court. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

7

exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" *PVC Windoors*, 598 F.3d at 808 (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)); *see also 8100 R.R. Ave. Realty Tr. v. R.W. Tansill Constr. Co.*, 638 So. 2d 149, 151 (Fla. 4th DCA 1994) (explaining that when the question of personal jurisdiction turns on the commission of a tort in Florida, the court must review the allegations of the complaint to determine if a cause of action has been stated).

Here, Plaintiff alleges the Court has specific jurisdiction, pursuant to Florida's long-arm statute, over the Defendants because they committed tortious acts in Florida. (Doc. 105, ¶¶ 2–4). Thus, the Court reviews the Fourth Amended Complaint below to assess whether a cause of action has been stated.

### B. Counts I – VI: Defamation *Per Se* and *Per Quod*

Under Florida law, a defamation claim has five elements: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

A defamation claim "may be categorized in one of two ways: defamation *per quod* or defamation *per se*." *Centennial Bank v. ServisFirst Bank Inc.*, No. 8:16-cv-88-T-36JSS, 2019 WL 13037034, at *6 (M.D. Fla. Apr. 17, 2019) (citing *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003)).

8

    *1.*  *Counts I – III: Defamation Per Se*

A publication amounts to defamation *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Flynn v. Cable News Network, Inc.*, No. 8:22-cv-343-MSS-SPF, 2023 WL 5985193, at *4 (M.D. Fla. Feb. 22, 2023) (citations omitted).

    *a.*  *Defamation Per Se: Underage Tweet*

Defendants argue the Underage Tweet does not concern Plaintiff. (Doc. 106, pp. 14–15, 21–23; Doc. 107, pp. 11–13). Plaintiff posits the Underage Tweet implicates Plaintiff because it was in response to a tweet posted by her husband, Taylor Sterling. (Doc. 110, p. 18; Doc. 111, pp. 14–15).

Plaintiff fails to state a plausible defamation *per se* claim for the Underage Tweet because it does not concern Plaintiff. (Doc. 105-2). Importantly, "a defamatory statement must be 'of and concerning' the plaintiff to be actionable." *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020) (citation omitted). While a plaintiff need not be named in the publication, "the communication as a whole [must] contain[] sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258–59 (S.D. Fla. 2021) (citations omitted) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973)). In applying this standard, courts analyze "whether the average person could reasonably

9

conclude the statement implicates the plaintiff upon reading the statement." *Bell v. Pollock*, No. 8:22-cv-02677-MSS-CPT, 2025 WL 1148677, at *6 (M.D. Fla. Apr. 17, 2025) (citing *Mac Isaac*, 557 F. Supp. 3d at 1259).

Here, the Underage Tweet does not name Plaintiff, and the "communication as a whole" does not contain any, let alone sufficient, "facts or references" to Plaintiff. *See Mac Isaac*, 557 F. Supp. 3d at 1258. Indeed, the Underage Tweet does not contain facts or references regarding any individual—it "contains only pronouns referring to unidentified parties." (*See* Doc. 105-2; Doc. 107, p. 12). While Plaintiff contends the Underage Tweet was in response to a tweet posted by Taylor Sterling, the Fourth Amended Complaint does not include Taylor Sterling's tweet, nor does it provide any context regarding such a tweet. (*See generally* Doc. 105). Consequently, the Court cannot consider Taylor Sterling's tweet when analyzing the "communication as a whole." *See Mac Isaac*, 557 F. Supp. 3d at 1258. The Court ultimately finds that an average person could not reasonably conclude the Underage Tweet implicates Plaintiff. As such, Plaintiff fails to state a claim for defamation *per se* as to the Underage Tweet.

### b. Defamation Per Se: Pedophile Tweet

Defendants argue the Pedophile Tweet does not concern Plaintiff. (Doc. 106, pp. 15, 21–23; Doc. 107, pp. 12–13). Plaintiff argues that members of the Roblox community would know the Pedophile Tweet was about Plaintiff. (Doc. 110, p. 19; Doc. 111, p. 15).

The Pedophile Tweet is not "of and concerning" Plaintiff because it does not name Plaintiff, and the "communication as a whole" does not contain "sufficient facts or references" to Plaintiff. (Doc. 105-3); *see Mac Isaac*, 557 F. Supp. 3d at 1258. Nonetheless, Plaintiff contends that "people in the Roblox community" would know that Plaintiff is the subject of the Pedophile Tweet given the following references: "her," "mid-30's," and "disneyworld trips." (Doc. 110, p. 19; Doc. 111, p. 15). Yet, Plaintiff does not explain how these vague references implicate her. (*See id.*). Moreover, the test is "whether the *average person* could reasonably conclude the statement implicates the plaintiff upon reading the statement." *Bell*, 2025 WL 1148677, at *6 (emphasis added); *see also Mac Isaac*, 557 F. Supp. 3d at 1259. Thus, Plaintiff's contention limited to the Roblox community is unavailing. The Court finds that an average person could not reasonably conclude the Pedophile Tweet implicates Plaintiff. Thus, as to the Pedophile Tweet, Plaintiff fails to state a plausible claim for defamation *per se*.

### c.   *Defamation Per Se: Wellness Tweet*

Defendant Frisch argues the Wellness Tweet is not actionable because it is an opinion based on publicly known facts. (Doc. 107, pp. 13–20). In response, Plaintiff maintains that Defendant Frisch's argument fails because it relies on evidence outside of the Fourth Amended Complaint. (Doc. 111, p. 18).

The Wellness Tweet is not actionable under the First Amendment because it contains true statements and a statement of pure opinion. *See Turner*, 879 F.3d at 1262–63 (citations omitted) ("Whether the statement is one of fact or opinion . . .

11

[is] [a] question[] of law for the court."). Pursuant to the First Amendment, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions." *Id.* at 1262. "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Id.* (citation omitted). A statement of pure opinion is "generally not actionable as defamation because, unlike a statement of fact, a statement of pure opinion is not readily capable of being proven false." *Bell*, 2025 WL 1148677, at *6 (citation omitted).

Within the Wellness Tweet, the true statements provide that: (1) there was a wellness check for Taylor Sterling because no one had seen nor heard from him; and (2) a police officer knocked on Taylor Sterling's door to make sure he was alive. (Doc. 105-5). Contrary to Plaintiff's assertion, the Court need not rely on external evidence to ascertain the truthful nature of these statements. (Doc. 111, p. 18). Exhibit E to the Fourth Amended Complaint displays the Wellness Tweet and Taylor Sterling's response thereto in which he confirms that a police officer conducted a wellness check because the police officer was under the impression that Taylor Sterling's co-workers and friends had not heard from him. (Doc. 105-5). Moreover, in Exhibit F, entitled "Declaration of Taylor Sterling," Taylor Sterling again confirms that a police officer conducted a wellness check at his home. (Doc. 105-6, ¶ 8). These exhibits to the Fourth Amended Complaint support the Court's

finding that the aforementioned statements are true. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007))). Accordingly, the statement that "the chick is coming undone," is an opinion based upon the true statements set forth in the publication, and thus, it is not actionable under the First Amendment. *See Turner*, 879 F.3d at 1264 (finding that defendant's statement was an opinion because it was a "subjective assessment" of the underlying facts and was "not readily capable of being proven true or false").

Considering the statements in the Wellness Tweet are not actionable under the First Amendment, Plaintiff cannot state a plausible claim for defamation *per se*.

### 2. Counts IV – VI: Defamation Per Quod

Regarding Plaintiff's defamation *per quod* claims, all parties raise arguments similar to those discussed above for the defamation *per se* claims. (*See generally* Docs. 106, 107, 110, 111). However, Defendant Frisch additionally argues that Plaintiff fails to allege special damages for each *per quod* claim. (Doc. 107, p. 23). In response, Plaintiff relies on her allegations regarding general damages. (Doc. 111, p. 19).

A claim for defamation *per quod* "requires explanation of context." *See Flynn*, 2023 WL 5985193, at *4 (citation omitted) (quoting *Daniels v. HSN, Inc.*,

13

No. 8:18-cv-3088-T-24JSS, 2020 WL 533927, at *4 (M.D. Fla. Feb. 3, 2020)). "In *per quod* actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo." *Id.* Additionally, to allege a claim for defamation *per quod*, a plaintiff must allege special damages. *Id.* "Special damages are *actual, out of pocket losses* which must be proven by specific evidence as to the time, cause and amount; whereas general damages encompass the more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing in the community." *Id.* at *5 (emphasis in original) (quoting *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004)). "Special damages' 'chief characteristic . . . is a realized or liquidated loss.'" *Id.* "Allegations for special damages must be pled in more than 'a conclusory manner; rather [w]ords actionable . . . *per quod* are those who[se] injurious effect must be established by due allegation and proof.'" *Id.* (quoting *Anderson v. Smith*, No. 3:19-cv-222-J-20JRK, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020)).

At the outset, Plaintiff's defamation *per quod* claims fail for the same reasons the defamation *per se* claims fail above. Moreover, the defamation *per quod* claims also fail because the Fourth Amended Complaint is devoid of any allegations for special damages. Contrary to Plaintiff's position, allegations of general damages are insufficient. *See Flynn*, 2023 WL 5985193, at *4 (citations omitted) (distinguishing special and general damages). Plaintiff thus fails to satisfy

14

the pleading standards for special damages set forth above. Consequently, Plaintiff fails to state a plausible claim for defamation *per quod* for any of the Tweets.

### C. Counts VII – IX: Defamation by Implication

As to Plaintiff's defamation by implication claims, all parties raise arguments similar to those discussed above for the defamation *per se* and *per quod* claims. (*See generally* Docs. 106, 107, 110, 111).

"Florida recognizes a cause of action for defamation by implication." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1123 (S.D. Fla. 2021) (citing *Jews For Jesus*, 997 So. 2d at 1098). "Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts . . . ." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014) (quoting *Jews For Jesus*, 997 So. 2d at 1106). Thus, defamation by implication is "premised not on direct statements but on false suggestions, impressions and implications arising from otherwise *truthful* statements." *Corsi*, 519 F. Supp. 3d at 1124 (emphasis added) (quoting *Jews For Jesus*, 997 So. 2d at 1098).

In the Fourth Amended Complaint, Plaintiff does not allege the "literally true facts" to plead a claim for defamation by implication for any of the Tweets. (*See generally* Doc. 105); *see Loomer v. Maher*, No. 5:24-cv-625-JSM-PRL, 2025 WL 756549, at *5 (M.D. Fla. Jan. 16, 2025). Specifically, Plaintiff does not aver the facts that Defendants have either "juxtaposed" to "imply a defamatory connection

15

between them" or "omitted" in a way that "creates a defamatory implication." *See id.* Rather, Plaintiff alleges that the statements at issue are false. (*See generally* Doc. 105). Consequently, Plaintiff fails to state a claim for defamation by implication for any of the Tweets. *See, e.g.*, *Klayman*, 22 F. Supp. 3d at 1255 (dismissing defamation by implication claim because "[a]t issue [was] a statement that may be defamatory because it is false, not a factually true one that creates a false impression"); *Corsi*, 519 F. Supp. 3d at 1124 (dismissing defamation by implication claims because the complaint alleged that the defendant's accusations were false, "not that they were true and gave a false implication").

### D. Count X: Conspiracy

Defendants contend that because Plaintiff's defamation claims fail to state a cause of action, Plaintiff's claim for conspiracy to commit defamation likewise fails. (Doc. 106, pp. 23–25; Doc. 107, pp. 23–24). Additionally, Defendant De La Rosa argues that Plaintiff fails to plead sufficient facts supporting the elements for conspiracy. (Doc. 106, pp. 23–25). In response, Plaintiff maintains that she has stated a *prima facie* case to reasonably infer a conspiracy claim. (Doc. 110, p. 20; Doc. 111, p. 19).

The elements of a civil conspiracy require: "(1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (quoting *Philip Morris USA, Inc. v. Russo*,

16

175 So. 3d 681, 686 n.9 (Fla. 2015)). "An actionable conspiracy requires an actionable underlying tort or wrong." *Id.* (quoting *Hercules Cap., Inc. v. Gittleman*, No. 16-cv-81663-MIDDLEBROOKS, 2018 WL 395489, at *24 (S.D. Fla. Jan. 12, 2018)).

Plaintiff alleges Count X against Defendants for their conspiracy to commit defamation. (Doc. 105, ¶¶ 81–83). However, Plaintiff fails to sufficiently plead a claim for defamation, and thus, there is no underlying tort or wrong. *See Honig*, 339 F. Supp. 3d at 1345. As a result, there is no actionable conspiracy. Even assuming Plaintiff's defamation claims survived, Plaintiff's conspiracy claim would still fail because it is riddled with conclusory and vague allegations. *See id.* at 1345 ("Although Rule 9(b) does not list conspiracy as a cause of action which must be pled with particularity, a complaint will be dismissed where the allegations are conclusory and vague." (citing *Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999))).

Plaintiff ultimately fails to state a claim for relief as to any of the Tweets. Consequently, Florida's long-arm statute is not satisfied, and thus, the Court lacks personal jurisdiction over the Defendants. As such, Defendants' Motions to Dismiss are due to be granted, and Plaintiff's claims against Defendants are due to be dismissed with prejudice.[8]

---

[8] Considering Plaintiff's claims are dismissed with prejudice, Defendant Frisch's Motion to Strike is denied as moot. (Doc. 108). As for Defendant Frisch's Motion for Sanctions, the Court does not find that sanctions are warranted here. (Doc. 117). Consequently, the Motion for Sanctions is denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant De La Rosa and Defendant Frisch's Motions to Dismiss (Docs. 106, 107) are **GRANTED**.

    a. Plaintiff's claims against Defendant De La Rosa and Defendant Frisch are **DISMISSED WITH PREJUDICE**.

2. Defendant Frisch's Motion to Strike (Doc. 108) is **DENIED AS MOOT**.

3. Defendant Frisch's Motion for Sanctions (Doc. 117) is **DENIED**.

4. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on May 29, 2025.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties