## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**JOMY STERLING,**

     **Plaintiff,**

**v.**                            **Case No. 6:21-cv-723-PGB-NWH**

**MADILYNN DE LA ROSA and**
**JANELLE FRISCH,**

     **Defendants.**

### REPORT AND RECOMMENDATION

This cause comes before the Court on the Motions for Attorney's Fees filed by Defendants Madilynn De La Rosa and Janelle Frisch (collectively, "Defendants"). (Docs. 129, 131). Both Motions seek an award of attorney's fees under Florida's Anti-SLAPP statute, following this Court's dismissal with prejudice of Plaintiff Jomy Sterling's Fourth Amended Complaint. Plaintiff filed a Response in opposition to each Motion. (Docs. 132, 133). For the reasons stated below, the undersigned will respectfully recommend that the Court grant in part and deny in part the Motions for Attorney's Fees and reserve jurisdiction to determine the amount of fees owed to Defendants.

### BACKGROUND

This action arose from allegedly defamatory statements made online by Defendants. Plaintiff and Defendants are active participants in the online community surrounding the popular video game Roblox, particularly on the social media platform

formerly known as Twitter. (Doc. 105, ¶¶ 9–10). In 2020, Defendants allegedly published three "tweets" on their joint Twitter account, known as "Beeism," that Plaintiff alleges were defamatory and damaged her reputation, business, and relationships. (*Id.*, ¶¶ 13, 24, 32, 35). Those three tweets state, in relevant part:

> & yea, when some1 in her mid 30's invites a 15 [year-old] she met on roblox to her house for overnite visits OF COURSE I'M GONNA SAY SOMETHIN. never called her a pedo but I 100% stand by the fact someone in their 30's should not invite minors to their house for overnite disneyworld trips[.]

(Doc. 105-3) (the "Pedophile Tweet").

> there was a wellness check for tay cuz no one had seen or heard from him since his meltdown, and we're allll witnesses to pix's behavior the last few weeks. the chick is coming undone. tay didn't get swatted, a cop knocked on his door to make sure he was alive[.]

(Doc. 105-5) (the "Wellness Tweet").

> if you need me to go back to 2015 and dig out those conversations we had on skype about her I can, they prove you were underage when she pursued you & continued to lie throughout the duration of your relationship. you married her under false pretenses.

(Doc. 105-2) (the "Underage Tweet").

Plaintiff initiated this action on April 23, 2021. (Doc. 1). In her original Complaint, she sued only "Jane Doe aka Beeism." (*Id.* at 1). On June 1, 2022, Plaintiff amended her complaint to identify Defendant Madilynn De La Rosa as the sole defendant (and the operator of the online persona Beeism). (Doc. 37). On October 17,

2023, Plaintiff filed a Second Amended Complaint, adding Defendant Janelle Frisch as a second defendant (and another operator of the online persona Beeism). (Doc. 83).

The Court dismissed Plaintiff's Second Amended Complaint without prejudice as a shotgun pleading and allowed Plaintiff to file another amended complaint. (*See* Doc. 101). Thereafter, Plaintiff filed the Third Amended Complaint, which the Court ordered to be stricken because Plaintiff failed to correct the defects that led to the dismissal of its predecessor. (*See* Docs. 103, 104).

Finally, Plaintiff filed the operative Fourth Amended Complaint, (Doc. 105, the "FAC"), on October 2, 2024. Defendants moved to dismiss the FAC on October 16, 2024. (Docs. 106, 107). The Court granted the motions to dismiss on May 29, 2025, and dismissed this action with prejudice. (Doc. 127). Now, both Defendants seek attorney's fees under Florida's Anti-SLAPP statute.[1] (Docs. 129, 131). Plaintiff responded to both subject Motions. (Docs. 132, 133).

## STANDARDS

### I.        The *Erie* Doctrine

When a federal court exercises diversity jurisdiction, state substantive law applies, but federal procedural law trumps state procedural law, through a principle known as the "*Erie* doctrine." *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v.*

---

[1] "SLAPP" refers to "strategic lawsuits against public participation," which are meritless lawsuits filed with the intent to chill or punish protected free speech by forcing the defendant to either surrender their constitutional rights or shoulder the heavy costs of litigation. Fla. Stat. § 768.295 (entitled "Strategic Lawsuits Against Public Participation (SLAPP) prohibited"); *SLAPP Suit*, LEGAL INFORMATION INSTITUTE (last visited December 2, 2025), https://www.law.cornell.edu/wex/slapp_suit [https://perma.cc/HPY3-ZLUF].

*Plumer*, 380 U.S. 460 (1965). But even a *substantive* state law will not apply in federal court if a Federal Rule of Civil Procedure already "answers the question in dispute." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (discussing the relationship between *Erie* and the Federal Rules of Civil Procedure). A right to recover attorney's fees is generally a substantive matter. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001), *amended on reh'g,* 311 F.3d 1077 (11th Cir. 2002).

While the "[c]lassification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor[,]" *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996), the central purpose of the *Erie* doctrine is to prevent forum-shopping by ensuring that, "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

## II.    Florida's Anti-SLAPP Statute and Defamation

Florida's Anti-SLAPP statute provides, in relevant part:

> (3) A person . . . in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . .

(4) A person or entity sued by . . . another person in
violation of this section has a right to an expeditious
resolution of a claim that the suit is in violation of this
section. A person or entity may move the court for an order
dismissing the action or granting final judgment in favor of
that person or entity. The person or entity may file a motion
for summary judgment, together with supplemental
affidavits, seeking a determination that the claimant's or
governmental entity's lawsuit has been brought in violation
of this section. The claimant . . . shall thereafter file a
response and any supplemental affidavits. As soon as
practicable, the court shall set a hearing on the motion,
which shall be held at the earliest possible time after the
filing of the claimant's . . . response. . . . The court shall
award the prevailing party reasonable attorney fees and
costs incurred in connection with a claim that an action was
filed in violation of this section.

Fla. Stat. § 768.295(3); *see Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020).[2]

The statute defines "free speech in connection with a public issue" as:

[A]ny written or oral statement that is protected under
applicable law and is made . . . in or in connection with a
play, movie, television program, radio broadcast,
audiovisual work, book, magazine article, musical work,
news report, or other similar work.

Fla. Stat. § 768.295(2)(a). As for the "applicable law" protecting the speech at issue,

the statute clarifies that the Florida Legislature intended for the definition to cover

speech "protected by the First Amendment to the United States Constitution and s. 5,

Art. I of the State Constitution." Fla. Stat. § 768.295(1).

Defamation, which is defined as "false statements of fact harming another's

reputation," is one of the few categories of speech *not* wholly protected by the First

---

[2] The undersigned appreciates that unpublished Eleventh Circuit opinions constitute
persuasive, and not binding, authority.

Amendment. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). However, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

## DISCUSSION

The instant Motions present several issues, some procedural and some substantive. The undersigned will address the threshold procedural issues first before moving onto the substantive issues and the merits.

### I.    Threshold Issues.

The threshold issues before the Court are: (1) whether the Anti-SLAPP statute applies in federal court; (2) whether Defendants qualify as "prevailing" parties; and (3) whether the Court must have made a finding that Plaintiff violated the Anti-SLAPP statute *before* entering judgment to award fees under the statute after judgment. Although these issues overlap in some ways, the undersigned will endeavor to address each issue separately.

### A.    Whether Florida's Anti-SLAPP Statute Applies in Federal Court

First, the Court must determine whether, or to what extent, Florida's Anti-SLAPP statute applies in this federal case. Florida's Anti-SLAPP law is a state statute, so the Court must look to the *Erie* doctrine. Fla. Stat. § 768.295 (2015). This Court previously addressed the Anti-SLAPP statute's pretrial dismissal provisions in this action. The Court found that those provisions overlap with the Federal Rules of Civil

Procedure and therefore declined to apply them.[3] (Doc. 24 at 11). But importantly, the Court noted that "the fee-shifting provision of anti-SLAPP laws is obviously different than the pretrial dismissal anti-SLAPP provisions which conflict with and ' "answer the same question" ' as the Federal Rules. (*Id.*).

Now the Court must determine whether the fee-shifting provisions apply here. Many states have anti-SLAPP laws, and many federal courts have confronted this issue as a result. The courts, however, have not arrived at a single answer; not all state anti-SLAPP laws are the same, and anti-SLAPP laws frequently contain a mixture of procedure and substance—with varying degrees of overlap with the Federal Rules of Civil Procedure. *See Gov't Employees Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950-KKM-JSS, 2021 WL 4391717, at *3–5 (M.D. Fla. Sept. 24, 2021) (explaining the state of the law on applying anti-SLAPP statutes in federal court). The Eleventh Circuit has yet to address whether Florida's Anti-SLAPP statute applies in federal court. *See Reed v. Chamblee*, No. 3:22-cv-1059-TJC-PDB, 2024 WL 69570, at *4 (M.D. Fla. Jan. 5, 2024) ("The Eleventh Circuit has not ruled on whether Florida's anti-SLAPP statute applies in federal court cases invoking diversity jurisdiction.").

In *Bongino v. Daily Beast Co.*, the District Court for the Southern District of Florida held that the fee shifting clause included in Florida's Anti-SLAPP statute

---

[3] The Anti-SLAPP statute grants a defendant certain procedural tools to resolve the case as quickly as possible. Specifically, the statute provides that the aggrieved defendant may "move the court for an order dismissing the action or granting final judgment" and may "file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the [lawsuit] has been brought in violation of this section." Fla. Stat. § 768.295(4).

operates as a "garden variety fee shifting provision," which "does not 'answer the same question' as the Federal Rules." 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020). The court stated that the statute "fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is 'without merit' and thus prohibited." *Id.*; *see Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021) (citing same); *accord Reed*, 2024 WL 69570, at *6 (collecting cases) ("[T]hus far, the tide of courts within this Circuit have applied the Florida fee provision. . . . The Court follows those cases and finds the fee provision in Florida's anti-SLAPP statute applies."). The undersigned agrees. Because it affects a substantive right—the right to attorney's fees—and does not answer a question already answered by the Federal Rules of Civil Procedure, *see Carbone*, 910 F.3d at 1349, the undersigned finds that the fee provision of the Florida Anti-SLAPP statute applies in this case.

The Court must also determine whether Defendants have properly invoked the Anti-SLAPP statute. Plaintiff argues that they have not because (1) Defendants failed to file an Anti-SLAPP motion before the Court dismissed this case with prejudice and (2) the Court did not make a finding of frivolousness or lack of merit in its Order granting Defendants' motions to dismiss. (Doc. 132 at 7–8).

Regarding the first argument, even if the Anti-SLAPP statute requires a defendant to file a special motion—which is unclear, as the statute itself refers to motions to dismiss and motions for summary judgment, Fla. Stat. § 768.295(4)—such a procedural requirement could not apply in federal court based on the *Erie* doctrine.

And assuming *arguendo* that this purported requirement is instead substantive in nature, it would contradict Rule 54(d)(2), which already "answers the question" of the deadline for attorney's fees motions. *See Carbone*, 910 F.3d at 1349.

With respect to Plaintiff's second argument, the Court *did* find that Plaintiff's claims lacked merit. The Court concluded that it lacked personal jurisdiction over Defendants *precisely because Plaintiff failed to state a claim*. (Doc. 127 at 17). The Court stated: "Plaintiff ultimately fails to state a claim for relief as to any of the Tweets. Consequently, Florida's long-arm statute is not satisfied . . . ." (*Id.*). The Court unambiguously rendered a decision on the merits. Because the Court's decision on the merits was "necessary to the holding of the case," it was not mere dicta. *United States v. Gillis*, 938 F.3d 1181, 1199 (11th Cir. 2019) (defining "dicta"). Therefore, regardless of how the Court labeled the dismissal, the dismissal was indeed a "merits-based determination,"; thus, the Court properly dismissed the case with prejudice. (Doc. 133 at 13).

Plaintiff argues that the Court's dismissal was not on the merits because the dismissal lacks preclusive effect under the principle of *res judicata*. (Doc. 133 at 13). To invoke the principle of *res judicata* in this Circuit, "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). In *Davila v. Delta Air Lines, Inc.*, the Eleventh

Circuit made clear that, even when a court "couche[s] its holding in jurisdictional terms," one must "look[] past the linguistic label employed by the district court in determining whether a dismissal transpired on jurisdictional grounds." 326 F.3d 1183, 1188–90 (11th Cir. 2003). Although the prior dismissal at issue in *Davila* was labeled as jurisdictional by the district court, the Eleventh Circuit found it "equally plain as a substantive matter that the court did not actually conclude that it lacked the power to adjudicate the dispute before it. Indeed, it was only after reaching the very merits of Davila's challenge . . . that the court found subject matter jurisdiction to be lacking." *Id.* at 1188.

The facts of *Davila* bear a striking resemblance to what transpired here. The Court did not find that it lacked the power to hear Plaintiff's claims. And the Court's discussion of the merits was not merely superlative or alternative to a jurisdictional finding, which would have led to a dismissal *without* prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1235 (11th Cir. 2008) (concluding that a dismissal on jurisdictional grounds should generally be without prejudice). Rather, the Court's decision truly rested on the merits—similar to the district court's decision in *Davila*.[4] *See* 326 F.3d at 1188; (Doc. 127). This does not mean that Plaintiff's claims are precluded in every possible form; that issue is simply not before

---

[4] Although the *Davila* case involved subject matter jurisdiction rather than personal jurisdiction, the basic issue in that case—that the plaintiff had not met his factual burden for seeking an appeal from an administrative decision, which the court saw as a finding on the merits, *see* 326 F.3d at 1188—is similar to the issue here, *i.e.* whether Plaintiff met her burden for invoking long-arm jurisdiction. Both this case and *Davila* are ultimately about the merits of the plaintiffs' claims, not whether the Court had the *power* to rule on the merits.

the Court (and the Court cannot make a determination as to the third and fourth elements of *res judicata* before Plaintiff has even brought another lawsuit). The undersigned therefore recommends that the Court find that its prior Order dismissing this action with prejudice was a decision on the merits.

### B.    Whether Defendants are the "Prevailing Part[ies]"

Next, the Court must determine whether Defendants are the "prevailing part[ies]" under this Court's Dismissal Order. Defendants must be the "prevailing part[ies]" in order to win attorney's fees under Florida's Anti-SLAPP statute. Fla. Stat. § 768.295(4) ("The court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section.").

In *Bongino*, the court noted that the Florida Anti-SLAPP statute's terminology "fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs" if an action is meritless. 477 F. Supp. 3d at 1323. Generally, a party "prevails" when the party achieves some "material alteration of the legal relationship of the parties [to the case]." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1381 (11th Cir. 2022). Furthermore, "[i]t is axiomatic that there must be a judicial determination on the merits in order for there to be a prevailing party." *Davis v. Jackson*, 776 F. Supp. 2d 1314, 1317 (M.D. Fla. 2011).

"Several courts have held that a defendant cannot be a prevailing party when the complaint is dismissed or disposed of for lack of jurisdiction, subject matter or otherwise." *Id.* (concluding that the defendant did not "prevail" where the court

dismissed for lack of standing, which is "equivalent" to a dismissal for lack of subject matter jurisdiction). But as discussed *supra*, this Court's Dismissal Order was, in fact, a decision on the merits. The question, then, is whether the Dismissal Order materially altered the legal relationship between the parties. *See PaineWebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp.*, 916 F. Supp. 1239, 1243 (M.D. Fla. 1996) (discussing the definition of "prevailing party").

The Dismissal Order disposed of the merits of Plaintiff's claims and found in no uncertain terms that Plaintiff had failed to state a claim for defamation as to any of the three published statements (or a claim for conspiracy due to the absence of a viable underlying tort). (Doc. 127 at 6–17). Considering that the Court dismissed Plaintiff's claims with prejudice in the Dismissal Order and, in doing so, "reject[ed] or rebuff[ed] the plaintiff's claims" on the merits, *Affordable Aerial Photography, Inc. v. Prop. Matters USA, LLC*, 108 F.4th 1358, 1363 (11th Cir. 2024), the Dismissal Order materially alters the legal relationship of the parties.

Although the Court cannot predetermine the exact scope or degree of the Dismissal Order's preclusive effect at this stage, "the 'prevailing party' inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Therefore, the undersigned will recommend that the Court find that Defendants are the prevailing parties of this action within the meaning of Florida's Anti-SLAPP statute.

### C.  Whether the Court Made, or Must Have Made, a Finding That Plaintiff Violated the Anti-SLAPP Statute

The next issue is whether the Court determined that Plaintiff violated the Anti-SLAPP statute in the Dismissal Order and, if not, whether the Court must have made such a finding in order to award Defendants their attorney's fees under that statute. (*See* Doc. 132 at 7–8). Relatedly, Plaintiff asserts that a hearing on the motion invoking the Anti-SLAPP statute is required for the Court to grant fees under the statute. (*See id.*).

These are clearly procedural issues, since they concern the timing and process for pursuing or waiving an Anti-SLAPP claim, not the substantive right created by the statute, *i.e.* the right to recover attorney's fees. Fla. Stat. § 768.295. As indicated by other courts in this District, Florida's Anti-SLAPP statute operates procedurally in a manner similar to Federal Rule of Civil Procedure 7(b), under which a party may file a motion seeking relief, and "the opposing party must then file a response and argue why the Court should not grant the moving party's requested relief." *Glassco, Inc.*, 2021 WL 4391717, at *6 (discussing the application of Rule 7(b) to an Anti-SLAPP motion). From a procedural standpoint, considering an Anti-SLAPP motion in federal court is no different than considering any other motion. Defendants filed their Motions on June 11, 2025, (Doc. 129), and June 12, 2025, (Doc. 131), which complies with the relevant Federal Rules of Civil Procedure and the Middle District of Florida Local Rules regarding the timing of such motions. Fed. R. Civ. P. 7(b), 54(d); Local Rule 7.01(b).

On its face, Florida's Anti-SLAPP statute does not require a court to find a violation at any particular stage of litigation. Fla. Stat. § 768.295(4). Rather, a court need only make a finding that the plaintiff violated the statute in connection with a motion brought under the statute. *Id.* In fact, the statute appears to give defendants the option of filing said motion in response to the complaint *or* at the summary judgment stage. *Id.*

Defendants raised the Anti-SLAPP statute in their Motions to Dismiss, (Docs. 106, 107), but the Court did not reach the issue in the Dismissal Order, (Doc. 127). Consequently, Defendants properly raised the issue again in the instant Motions for Attorney's Fees. (Docs. 129, 131). Nothing in the Anti-SLAPP statute appears to forbid filing an Anti-SLAPP motion after judgment, as Defendants did here.[5] Likewise, nothing in the Federal Rules of Civil Procedure forbids Defendants from seeking fees after dismissal. Because Plaintiff knew that Defendants intended to seek attorney's fees before the Court dismissed this case, there is no risk of prejudice in this circumstance. *See Gordon v. Heimann*, 715 F.2d 531, 537 (11th Cir. 1983) (holding that "requests for attorneys' fees may be made by motion within a reasonable period of time after the final judgment in a case" and, where permissible, "in the initial pleadings, by motion during the litigation, or in a separate subsequent action."); *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002) (although the court

---

[5] Even if the statute *did* require that the defendant file the Anti-SLAPP motion at a particular stage of litigation, such a requirement would likely be procedural in nature and inapplicable where a federal court is exercising diversity jurisdiction. *See supra*, § I.

treated some claims as *prima facie* valid for purposes of summary judgment, it was clear that "the majority of Plaintiffs' claims . . . were patently frivolous with no credible evidentiary support,"; thus, the court awarded fees to the defendant).

Finally, although the Court did not expressly reserve jurisdiction to determine issues of fees and costs in the Dismissal Order, that does not deprive the Court of jurisdiction now. In general, "if a judgment is entered by the district court, it will retain jurisdiction to resolve any attorneys' fees and costs disputes." *Zinni v. ER Sols., Inc.*, 692 F.3d 1162, 1168 (11th Cir. 2012); *see Hayden v. Vance*, 708 F. App'x 976 (11th Cir. 2017) (same); *Cap. Asset Rsch. Corp. v. Finnegan*, 216 F.3d 1268, 1270–71 (11th Cir. 2000) (finding that the district court had jurisdiction to determine the defendant's entitlement to fees where the defendant raised the issue for the first time after judgment).[6]

The Anti-SLAPP statute's hearing requirement is also clearly a matter of procedure, and Rule 54(d)(2) does not require a hearing in this circumstance, where Plaintiff filed written responses to the Motions for Attorney's Fees. *See Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986) (whether to hold a hearing on a motion for summary judgment was a procedural matter and therefore controlled by the Federal Rules).

---

[6] The undersigned notes that the Court also denied Defendant Frisch's Motion for Sanctions in the Dismissal Order, stating that it did not find that sanctions were warranted. (Doc. 127 at 17 n.8). However, Defendant Frisch's Motion for Sanctions sought sanctions under Rule 11 and the Court's inherent power, which operate under different substantive standards than those governing the Anti-SLAPP statute; therefore, the Dismissal Order does not prevent Defendants from seeking fees under the Anti-SLAPP statute now.

Plaintiff also points to this Court's prior finding that Plaintiff had sufficiently stated a *prima facie* case for defamation to issue third-party subpoenas. (*See* Docs. 10, 16). However, as recently noted by the Florida Supreme Court in the context of Florida's Anti-SLAPP statute, "[a] judicial determination that a speech-targeted lawsuit is 'without merit' may not be possible at the outset of a case and may require the development of a factual record." *Vericker v. Powell*, 406 So. 3d 939, 945 (2025). The fact that this Court found Plaintiff's claim sufficient to proceed with third-party discovery at the very beginning of this action does not foreclose a finding that Plaintiff's claims lack merit at a later stage in the case, when the Court is in a better position to evaluate the merits. This Court's limited, preliminary finding of a *prima facie* claim, made for purposes of third-party discovery at the beginning of the case, does not prevent the Court from evaluating the sufficiency of Plaintiff's claims in the future. Indeed, the Court's order of dismissal found that Plaintiff had failed to state a claim.

## II.    Substantive Issues.

Having found that Defendants properly raised the Anti-SLAPP statute, the Court must now determine whether Plaintiff's claims were (1) "without merit" and (2) brought "primarily because [Defendants have] exercised" their First Amendment rights. Fla. Stat. § 768.295(3).

### A.    Whether Plaintiff's Claims were "Without Merit."

In the Dismissal Order, the Court found that all of Plaintiff's defamation claims were without merit. Plaintiffs brought claims of defamation *per se*, defamation *per quod*, defamation by implication, and conspiracy to commit defamation, all premised on the three Tweets. First, for Plaintiff's claims of defamation *per se*, the Court found that Plaintiff had failed to state a claim because "an average person could not reasonably conclude" that the Tweets "implicate[d] Plaintiff." (Doc. 127 at 10–11). The Court also concluded that one communication in particular, the Wellness Tweet, was "not actionable under the First Amendment because it contains true statements and statement[s] of pure opinion." (*Id.* at 11). Plaintiff's defamation *per quod* claims failed "for the same reasons the defamation *per se* claims" failed, and because Plaintiff did not allege special damages. (*Id.* at 14). Plaintiff's defamation-by-implication claims failed because Plaintiff did not allege that Defendants juxtaposed true facts to create false implications about Plaintiff, as required for such claims. (*Id.* at 15). Plaintiff's conspiracy claim, the last domino to fall, failed because Plaintiff had not alleged any viable underlying tort. (*Id.* at 16).

None of these claims were especially close calls. As explained previously by the Court, the Tweets did not refer to Plaintiff by name, instead mentioning a woman in her mid-thirties who visits Disney World, (*id.* at 11), hardly a narrow-enough category to lead a reasonable person to connect the statement to Plaintiff. Some of the Tweets contained no identifying facts at all, except for using gendered pronouns—far from a

"sufficient fact[] or reference[]" to lead a reasonable person to identify Plaintiff as the subject, the Court found. (*Id.* at 9–10). The Wellness Tweet in particular, which is the only Tweet that refers to Plaintiff's husband's name and her screenname, was found by the Court to be a First Amendment-protected expression of pure opinion. (*Id.* at 11–12).

In the Dismissal Order, the Court never explicitly stated that Plaintiff's defamation claims were *frivolous*—but that is not what the Anti-SLAPP statute demands. Instead, the statute covers claims "without merit." Fla. Stat. § 768.295(3). In general, "merits" means the "elements or grounds of a claim or defense, as opposed to technical or procedural issues." *Merits*, BLACK'S LAW DICTIONARY (12th ed. 2024). Defamation claims have been found to be "without merit" within the meaning of Florida's Anti-SLAPP statute where the subject statements were not "of and concerning" the plaintiff, *see Parekh*, 820 F. App'x at 833–34; where the plaintiff failed to state a claim for defamation, *see Bongino*, 477 F.Supp.3d at 1322; *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021); and where the plaintiff failed to allege the essential elements of a defamation claim, *see Corsi*, 519 F.Supp.3d at 1119. Again, this Court dismissed Plaintiff's claims with prejudice because Plaintiff failed to state a claim. As a result, the undersigned concludes that Plaintiff's claims were "without merit" under Fla. Stat. § 768.295(3).

**B.    Whether Plaintiff Sued Defendants "Primarily" Because Defendants Exercised Their First Amendment Rights.**

The Florida Anti-SLAPP statute's second prong poses a more complex question: whether Plaintiff brought the meritless defamation claims "primarily because [Defendants] exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3).[7] The statute defines "free speech in connection with a public issue" as:

> [A]ny written or oral statement that is protected under applicable law and is made before a governmental entity in connection with an issue under consideration or review by a governmental entity, or is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work.

Fla. Stat. § 768.295(2)(a). This second prong of the statute has two sub-prongs of its own: first, the speech at issue must be "protected under applicable law"; and second, the speech at issue must have been made in (or in connection with) a medium covered by the statute.

### i.    Whether Defendants' Speech was "Protected Under Applicable Law"

Defendants will only be entitled to attorney's fees if their statements were "protected under applicable law." Fla. Stat. § 768.295(3). The Anti-SLAPP statute

---

[7] The phrase "primarily because" is an odd choice of words. It could be read to suggest, for example, that the plaintiff must have the subjective intent of chilling or punishing constitutionally protected speech. However, no Florida or federal case on the Anti-SLAPP statute appears to interpret it this way. Instead, courts have taken this prong to mean—as discussed by the cases cited *infra*, § II(B)(i)—simply that the plaintiff's claims target constitutionally protected speech, requiring no inquiry into the plaintiff's subjective intent. Moreover, injecting such a *scienter* requirement into the statute would dramatically narrow its scope and frustrate the statute's purposes. Fla. Stat. § 768.295(1).

serves to discourage lawsuits aimed at speech that the Constitution protects. The statute's statement of legislative intent makes it clear that "applicable law" refers to "the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution":

> It is the intent of the Legislature to protect the right in Florida to exercise the rights of free speech in connection with public issues, and the rights to peacefully assemble, instruct representatives, and petition for redress of grievances before the various governmental entities of this state as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution. It is the public policy of this state that a person or governmental entity not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in connection with public issues. Therefore, the Legislature finds and declares that prohibiting such lawsuits as herein described will preserve this fundamental state policy, preserve the constitutional rights of persons in Florida, and assure the continuation of representative government in this state. It is the intent of the Legislature that such lawsuits be expeditiously disposed of by the courts.

Fla. Stat. § 768.295(1). Therefore, a statement is only "protected under applicable law" when the statements are *constitutionally* insulated from liability.

Defamatory statements are not constitutionally protected speech. *Counterman*, 600 U.S. at 73. However, the First Amendment limits defamation actions in two ways: "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner*, 879 F.3d at 1262. A defamation claim can fail for a different reason—for instance, because the statement does not concern the plaintiff, or because

the statement was not published—without necessarily running afoul of the First Amendment. *See Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 459 (Fla. 3d DCA 2023) (listing elements of defamation in Florida).

It follows that Plaintiff's failure to state a claim for defamation does not necessarily entail First Amendment protection. Here, most of Plaintiff's claims failed not because they sought to abridge protected true statements or statements of opinion, but because Plaintiff failed to sufficiently allege that the statements were "of and concerning" Plaintiff. (*See* Doc. 127 at 9–16). Only one of the statements, the so-called "Wellness Tweet," was dismissed explicitly because it targeted speech protected by the First Amendment as pure opinion. (*See id.* at 12–13).

The other two statements at issue, the Pedophile Tweet and the Underage Tweet, could *conceivably* amount to actionable defamation if the factual assertions contained therein are proven false and if further context would have made it clear that the statements referred to Plaintiff. (*See id.* at 2–3) (contains the statements at issue). Florida courts have denied requests for fees under the Anti-SLAPP statute where the plaintiff alleged facts that "if proven, could be defamatory as a matter of law," such as statements claiming illegal activity by the defendant. *See Mishiyev v. Davis*, 402 So. 3d 443, 451 (Fla. 2d DCA 2025); *McQueen v. Baskin*, 377 So. 3d 170, 178 (Fla. 2d DCA 2023) (finding that the subject "statements, if proven, could be defamatory as a matter of law," and "as such, the statements were not protected speech under the Anti-SLAPP statute.").

Defendants have previously argued at length regarding the veracity and context of the Pedophile and Underage Tweets, (*see* Docs. 106, 107), but the Court did not find that those statements were not actionable *at all*—only that Plaintiff had failed to state a claim. (*See* Doc. 127). Here, although Plaintiff's defamation claims failed as a matter of law, it is not clear that the Underage and Pedophile Tweets belong to that category of indisputably protected speech that the Florida Legislature meant to defend with the Anti-SLAPP statute. Perhaps at a later stage of litigation the factual record could have assuaged any doubt as to whether those Tweets were potentially actionable defamation under the First Amendment. But the facts and allegations before the Court do not satisfy the requirements of the Anti-SLAPP statute as to the Underage and Pedophile Tweets.

### ii.      *Where the Statement Was "Made"*

Florida's Second District Court of Appeal clarified that "[f]ree speech made in connection with public issues, in pertinent part, merely requires a showing that the public speech is contained in or was made in connection with one of the listed media formats or 'other similar modes for widely disseminating protected First Amendment speech.' " *Mishiyev*, 402 So. 3d at 448–49 (statements made "on social media" were covered, while statements made *outside* social media or another enumerated medium, such as statements made only to another individual, were not) (citation omitted).

The statute also captures more than just traditional print media; it also captures other media used "for widely disseminating protected First Amendment speech." *WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 562 (Fla. 4th DCA 2019)

(Gross, J., concurring specially). Statements made on social media, such as Twitter, appear to fall within the ambit of the Anti-SLAPP law. *See id.*; *McQueen*, 377 So. 3d at 176 (applying Anti-SLAPP analysis to statements made online); *Davis v. McKenzie*, No. 16-62499-CIV, 2017 WL 8809359, at *2 (S.D. Fla. Nov. 3, 2017) (granting Anti-SLAPP fees where the statement was made online), *report and recommendation adopted,* No. 16-62499-CIV, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018).

The Anti-SLAPP statute has one final wrinkle: it only applies to free speech made "in connection with a public issue." Fla. Stat. § 768.295(3). At first blush, this would seem to limit the statute's scope based on the *subject* of the speech at issue; if that were the statute's meaning, then Defendants' entitlement to fees would be doubtful, since the statements at issue appear to concern a private relationship.[8] But the statute's definition of "free speech in connection with public issues," quoted in full *supra*, belays that interpretation. The statute seems to define such speech as belonging to one of two categories, both of which must be "protected under applicable law": first, either speech "made before a governmental entity in connection with an issue under consideration or review by a governmental entity"; or second, speech "made in or in connection with" any of the listed media. Fla. Stat. § 768.295(2)(a). Under this definition, an issue is "public" if the speech exists in a medium *accessible to the public,*

---

[8] Although the parties belong to a vibrant online community, Plaintiff's private relationship is only tangentially related to that community. The Roblox community may have "some interest or curiosity" in the matter, *see Royster v. Robinson*, No. 20-14877, 2021 WL 5105810 at *3 (11th Cir. Nov. 3, 2021), but that does not render the relationship an issue of public importance. However, because the Anti-SLAPP statute does not define the term "public issue" in this way, the Court need not determine whether the statements concern an issue of sufficient importance or public concern.

an interpretation borne out by Florida caselaw on the statute. *See Mishiyev*, 402 So. 3d at 448–49; *WPB Residents for Integrity in Gov't, Inc.*, 284 So. 3d at 562; *McQueen*, 377 So. 3d at 176. The undersigned agrees with the caselaw finding that the Anti-SLAPP statute applies to statements made on social media. Twitter certainly qualifies as a social medium accessible to the public, and the subject Tweets are therefore statements made "in connection with a public issue." Fla. Stat. § 768.295(3).

### III.  Other Issues.

Defendants raise two other issues that must be addressed: Defendants' requests for fees under 28 U.S.C. § 1927 ("Section 1927") and their request to assign joint and several liability for fees to Plaintiff and Plaintiff's counsel.

### A.  Section 1927

Both Defendants seek fees under Section 1927 "in the alternative" to fees under the Anti-SLAPP statute. (Docs. 129 at 9–13, 131 at 9–11). Although the undersigned has determined that Defendants are entitled to some fees under the Anti-SLAPP statute, the undersigned will address the application of Section 1927 to the extent that it may entitle Defendants to fees beyond what the Anti-SLAPP statute already provides.

Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 is a narrow exception to the general rule that parties pay their own attorney's fees. A violation of Section 1927 requires two elements: "First, the attorney must engage in 'unreasonable and vexatious' conduct. Second, that 'unreasonable and vexatious' conduct must be conduct that 'multiplies the proceedings.' " *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (citation omitted). If both elements are met, then "the dollar amount of the sanction must bear a financial nexus to the excess proceedings" produced by the attorney's misconduct. *Id.*

Section 1927 is a scalpel, not a sledgehammer. It does not punish "any and all attorney conduct courts want to discourage." *Id.* at 1396. Rather, "[u]nder the plain statutory language, objectionable conduct—even 'unreasonable and vexatious' conduct—is not sanctionable unless it results in proceedings that would not have been conducted otherwise." *Id.*[9]

Defendants urge the Court to award fees under Section 1927 because Plaintiff and her counsel pursued Plaintiff's claims after Defendants informed Plaintiff of several defects, some of which proved fatal in the Court's Dismissal Order. (*See* Docs. 129, 131). But it is not enough that Plaintiff ultimately lost her case; her attorney must also have "unreasonably and vexatiously" multiplied proceedings in this action. 28

---

[9] In the Eleventh Circuit, sanctions under Section 1927 may also require a finding of conduct "tantamount to bad faith," an objective test that does not depend on the subjective intentions of counsel. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005). However, this bad faith requirement may be a dead letter. *Id.* at 1178 n.6 (discussing the Section 1927 bad faith requirement's shaky legal foundations). In an abundance of caution, the undersigned will not rely upon this bad faith requirement in arriving at his recommendations.

U.S.C. § 1927. The Court declined to sanction Plaintiff under its inherent authority or Rule 11 when dismissing the case, which suggests that Plaintiff's claims, while meritless, were not entirely *frivolous*. (Doc. 127 at 17 n.8). And although the proceedings in this action have stretched over four years, the case never advanced beyond the pleadings stage. Defendants never filed an answer. Plaintiff amended the complaint several times, but always with the Court's leave. (*See* Docs. 37, 83, 105). Beyond the pleadings, Plaintiff also sought third-party discovery—a request that the Court granted over Defendants' objections and that led to Defendant De La Rosa joining this action. (Docs. 16, 24, 37).

The conduct of Plaintiff's counsel in this litigation does not appear "unreasonabl[e] or vexatious[]," and Plaintiff's counsel did not multiply the proceedings beyond what was necessary to prosecute Plaintiff's claims. Therefore, the undersigned will recommend that the Court deny Defendants' requests for fees under Section 1927, notwithstanding Defendants' partial victory under the Anti-SLAPP statute.

## B.    Joint and Several Liability

Last but not least, Defendants seek to impose joint and several liability for fees on Plaintiff and her counsel. (Docs. 129 at 7–9, 131 at 7–9). Defendants correctly note that the Anti-SLAPP statute does not say whether Plaintiff or Plaintiff's attorney must pay fees awarded under the statute. (*Id.*). However, Defendants argue that the statute must apply to attorneys because the statute forbids a person or entity from "fil[ing] or caus[ing] to be filed, ***through its employees or agents***, any lawsuit" that violates the

- 26 -

statute. Fla. Stat. § 768.295(3) (emphasis added). In Defendants' view, "agents" includes attorneys, and attorneys who file a prohibited action are therefore on the hook for fees. (*See* Docs. 129, 131).

But this is a *non sequitur*. Even if "agents" refers to attorneys, nothing in the sentence quoted by Defendants—or in any other part of the statute—suggests that a such "employees or agents" must chip in to help the plaintiff pay fees awarded under the statute. On the contrary, the Anti-SLAPP statute places the blame squarely at the feet of the "person or entity" who filed the prohibited action or who caused their "employees or agents" to file the action. Fla. Stat. § 768.295(3).

The Florida Legislature has unambiguously imposed liability on attorneys in other statutes. For instance, Section 57.105 states that, when a losing party "knew or should have known that a claim or defense" was frivolous, "the court shall award a reasonable attorney's fee, including prejudgment interest, ***to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney*** . . . ." Fla. Stat. § 57.105(1). The Anti-SLAPP statute says nothing of the sort.

Statutes awarding attorney's fees are in derogation of the common law and "must be strictly construed." *Campbell v. Goldman*, 959 So. 2d 223, 226 (Fla. 2007); *Gershuny v. Martin McFall Messenger Anethesia Pro. Ass'n*, 539 So. 2d 1131, 1132 (Fla. 1989) ("[T]he rule in Florida requires that statutes awarding attorney's fees must be strictly construed . . . ."). As such, the undersigned cannot properly read between the lines of the Anti-SLAPP statute in the manner proposed by Defendants.

At the same time, the Anti-SLAPP statute does not explicitly *foreclose* liability on the part of the attorney who files a prohibited action. There is, unfortunately, a dearth of caselaw on this issue. Defendants cite only to the statute's text and to general agency caselaw, and Plaintiff points out that no court has found a plaintiff's attorney liable for fees awarded under the Anti-SLAPP statute. (Docs. 129 at 7–9, 131 at 7–9, 132 at 9 n.5).  Regardless, this issue may be better addressed at the next stage of proceedings, when the Court must determine the amount of fees to which Defendants are entitled and when the parties can provide fuller briefing on this subject. In the absence of authority to the contrary, and in light of the Florida Supreme Court's consistent instruction to strictly construe fee-shifting statutes, the undersigned will recommend that the Court deny Defendants' request for joint and several liability without prejudice at this juncture.

## IV.    Conclusion.

In summary: First, the Court's order of dismissal was a decision on the merits that dismissed the case with prejudice and rendered Defendants the prevailing parties in this action. Second, all the Tweets, as statements published on social media, were "made in connection with public issues," but only the Wellness Tweet was "protected under applicable law." Fla. Stat. § 768.295(3). This is because Plaintiff's claims based on the Underage and Pedophile Tweets failed for reasons unrelated to any *constitutional* limitation on defamation, *i.e.* the defenses of truth or pure opinion, while Plaintiff's claims as to the Wellness Tweet failed because the Court found the Wellness Tweet to be a statement of pure opinion protected by the First Amendment. Third, because it

cannot be determined from the record that the Underage or Pedophile Tweets enjoy constitutional protection, Defendants are not entitled to their attorney's fees as to any claims based on those Tweets. And fourth, Defendants are entitled to their attorney's fees as to claims based on the Wellness Tweet.[10] Therefore, the undersigned will recommend that the Court find that Defendants are entitled to their reasonable attorney's fees as it relates to the Wellness Tweet and reserve jurisdiction to determine the proper amount of fees owed at a later date.[11]

## RECOMMENDATION

Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that the Court,

(1)   **GRANT IN PART** Defendants' Motions for attorney's fees (Docs. 129, 131) to the extent that they seek entitlement to attorney's fees under Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, with respect to claims arising out of the Wellness Tweet;

---

[10] The Anti-SLAPP statute provides that a court "shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that ***an action*** was filed in violation of this section." Fla. Stat. § 768.295(4) (emphasis added). However, no case suggests that this provision requires that *every* part of the lawsuit violate the statute for the defendant to recover fees. Such a reading would potentially conflict with the statute's prohibition on filing "any lawsuit, ***cause of action, claim, cross-claim, or counterclaim***" without merit against constitutionally protected speech. Fla. Stat. § 768.295(3) (emphasis added). Furthermore, if the statute could only entitle a defendant to fees if the *entire* lawsuit violates it, then a plaintiff could easily evade the statute by including a single viable claim in an action that is otherwise meritless and hostile to protected speech, thus defeating the statute's stated purpose. As such, Defendants can be entitled to fees for one Tweet but not the others.

[11] The undersigned's recommendation is limited to Defendants' *entitlement* to fees and does not resolve any questions as to the *amount* of fees to which Defendants are entitled or the exact scope of an award of fees under Florida's Anti-SLAPP statute.

(2)    **DENY WITHOUT PREJUDICE** Defendants' Motion to the extent it seeks to impose joint and several liability on Plaintiff and Plaintiff's counsel;

(3)    **DENY** Defendants' Motion in all other respects;

(4)    **RESERVE** jurisdiction to determine the amount of fees owed to Defendants.

## NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**RECOMMENDED** in Orlando, Florida, on December 9, 2025.

NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

Presiding District Judge

- 30 -