# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOMY STERLING,

      **Plaintiff,**

**v.**                          **Case No: 6:21-cv-00723-PGB-NWH**

MADILYNN DE LA ROSA and
JANELLE FRISCH,

      **Defendants.**

_____/

## ORDER

This cause comes before the Court on the following filings:

1.     Defendant Janelle Frisch's ("**Defendant Frisch**") Motion for Attorneys' Fees (Doc. 129 ("**Defendant Frisch's Motion**"));

2.     Defendant Madilynn De La Rosa's ("**Defendant De La Rosa**")[1] Motion for Attorneys' Fees (Doc. 131 ("**Defendant De La Rosa's Motion**"));[2]

3.     Magistrate Judge Nathan W. Hill's Report and Recommendation (Doc. 139 (the "**Report and Recommendation**")) issued on December 9, 2025;

---

[1]     Together, Defendant Frisch and Defendant De La Rosa shall be referred to as "Defendants".

[2]     Together, Defendant Frisch's Motion and Defendant De La Rosa's Motion shall be referred to as the "Motions".

4.  Plaintiff Jomy Sterling's ("**Plaintiff**") Objection to the Report and Recommendation (Doc. 140 (the "**Objection**"));

5.  Defendant Frisch's Response to the Objection (Doc. 141 ("**Defendant Frisch's Response**")); and

6.  Defendant De La Rosa's Response to the Objection (Doc. 142 ("**Defendant De La Rosa's Response**")).[3]

Upon consideration, the Court overrules the Objection; adopts in part and modifies in part the Report and Recommendation;[4] and grants in part, denies in part, and denies without prejudice in part the Motions.

## I.   BACKGROUND

Plaintiff initiated this defamation action on April 23, 2021. (Doc. 1).  In the operative Fourth Amended Complaint (Doc. 105 (the "**Operative Complaint**")), Plaintiff alleged that Defendants, using the online persona "Beeism," began to tweet "false and defamatory accusations" which were damaging to Plaintiff's reputation and business.[5] (Doc. 105, ¶ 12). Specifically, Plaintiff highlighted three

---

[3]   Together, Defendant Frisch's Response and Defendant De La Rosa's Response shall be referred to as "Defendants' Responses".

[4]   As discussed below, although the Court agrees with the Magistrate Judge's ultimate conclusion in the Report and Recommendation, the Court differs in its analysis of whether Defendants are "prevailing parties" under Florida's Anti-SLAPP statute. *See* discussion *supra* Section III.B.

[5]   At the time this suit commenced, X, the social media platform that was formerly known as Twitter, still operated under the name "Twitter." *See* Chantal Da Silva, *Twitter rebrands to 'X' as Elon Musk loses iconic bird logo*, NBC NEWS (July 24, 2023, 8:32 AM), https://www.nbcnews.com/news/us-news/twitter-rebrands-x-elon-musk-loses-iconic-bird-logo-rcna95880. Therefore, when Defendants' alleged conduct took place, the information that Defendants posted under the pseudonym "Beeism" was technically posted on "Twitter" and considered a "Tweet." *Id.*; (*see also* Doc. 105, ¶¶ 11–24). Accordingly, for the instant

of Defendants' tweets as containing defamatory language. (*Id.* ¶¶ 13, 17, 24; *see also* Doc. 105-2; Doc. 105-3; Doc. 105-5; Doc. 140, p. 2). The language of those tweets are as follows:

> if you need me to go back to 2015 and dig out those conversations we had on skype about her I can, they prove you were underage when she pursued you & continued to lie throughout the duration of your relationship. you married her under false pretenses. . . .

(Doc. 105-2 (the "**Underage Tweet**")).

> & yea, when some1 in her mid 30's invites a 15 [year-old] she met on roblox to her house for overnite visits OF COURSE I'M GONNA SAY SOMETHIN. never called her a pedo but I 100% stand by the fact someone in their 30's should not invite minors to their house for overnite disneyworld trips[.]

(Doc. 105-3 (the "**Pedophile Tweet**")).

> there was a wellness check for tay cuz no one had seen or heard from him since his meltdown, and we're allll witnesses to pix's behavior the last few weeks. the chick is coming undone. tay didn't get swatted, a cop knocked on his door to make sure he was alive[.]

(Doc. 105-5 (the "**Wellness Tweet**")).[6]

On October 16, 2024, Defendants moved to dismiss the Operative Complaint for lack of personal jurisdiction and for failure to state a claim.[7] (*See* Docs. 106, 107). The Court granted Defendants' motions to dismiss (Doc. 127 (the

---

Order, the Court will refer to these posts as "tweets" and the social media platform they were posted on as "Twitter." Nevertheless, the Court acknowledges that the social media platform has since changed.

[6] Together, the Underage Tweet, the Pedophile Tweet, and the Wellness Tweet shall be referred to as "Defendants' Tweets." (Docs. 105-2, 105-3, 105-5).

[7] Importantly, both Defendants raised arguments related to Florida's Anti-SLAPP statute in their motions to dismiss. (*See* Doc. 106, pp. 25–26; Doc. 107, pp. 20–23).

"**Dismissal Order**")) on May 29, 2025, dismissing the action with prejudice.  In the Dismissal Order, the Court considered whether it had specific jurisdiction over Defendants, pursuant to Florida's long-arm statute. (*Id.* at pp. 7–8). Applying Florida Law, the Court determined that Florida's long-arm statute requires courts to examine "whether the allegations of the complaint state a cause of action" before addressing the issue of specific jurisdiction. (*Id.* (citing *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010))). In reviewing the merits of Plaintiff's claims, the Court found Plaintiff failed to state plausible causes of action for defamation *per se*, defamation *per quod*, and defamation by implication for each of Defendants' Tweets.[8] (*Id.* at pp. 9–16). Accordingly, the Court held that, because Plaintiff failed to state a claim for relief as to any of Defendants' Tweets, Florida's long-arm statute was not satisfied, and thus, the Court lacked personal jurisdiction over Defendants. (*Id.* at p. 17).

Consequently, after Plaintiff's claims were dismissed with prejudice, Defendants filed the Motions seeking attorneys' fees under Florida's Anti-SLAPP statute.[9] (*See* Docs. 129, 131); *see also* FLA. STAT. § 768.295. On December 9, 2025, Magistrate Judge Hill submitted a Report and Recommendation recommending

---

[8]   The Court also held that Plaintiff's claim for conspiracy to commit defamation, like the other claims, failed because "Plaintiff fail[ed] to sufficiently plead a claim for defamation, and thus, there [was] no underlying tort or wrong." (Doc. 127, p. 17).

[9]   As mentioned in the Report and Recommendation, "'SLAPP' refers to 'strategic lawsuits against public participation,' which are meritless lawsuits filed with the intent to chill or punish protected free speech by forcing the defendant to either surrender their constitutional rights or shoulder the heavy costs of litigation." (Doc. 139, p. 3 n.1 (citing FLA. STAT. § 768.295)).

that the Court grant in part Defendants' Motions "to the extent that they seek entitlement to attorney's fees under Florida's Anti-SLAPP statute" with respect to claims arising from the "Wellness Tweet" only. (Doc. 139, p. 29).

Plaintiff objected to the Report and Recommendation on December 23, 2025. (Doc. 140). In her Objection, Plaintiff asserts that the Magistrate Judge erred in his analysis of Florida's Anti-SLAPP statute because (1) the statute does not apply in federal court, (2) Defendants cannot be considered "prevailing parties" under the statute, (3) the fee shifting provision should not apply to the present matter because Plaintiff's claims were not entirely meritless, and (4) Defendants' Tweets do not constitute "free speech in connection with public issues." (*Id.* at pp. 1–9). In Defendants' Responses, Defendants maintain that three of Plaintiff's objections are arguments that she previously raised to the Magistrate Judge, and further that Plaintiff's fourth objection is an entirely new argument. (Doc. 141, p. 2; Doc. 142, p. 2). Accordingly, Defendants contend that the Court should overrule Plaintiff's Objection. (Doc. 141, pp. 1–2; Doc. 142, pp. 1–2). The matter is now ripe for the Court's review.

## II.   LEGAL STANDARD

When a party objects to a magistrate judge's findings, the district court must "make a *de novo* determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court must consider the record and factual issues independent of the magistrate judge's report, as *de novo*

review is essential to the constitutionality of § 636. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512–13 (11th Cir. 1990).

That said, "a party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with. *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) (citation omitted). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id.*  Moreover, "[o]bjections that . . . simply rehash or reiterate the original briefs to the magistrate judge are not entitled to *de novo* review." *Fibertex Corp. v. New Concepts Distribs. Int'l, LLC*, No. 20-20720-Civ-Scola, 2021 WL 302645, at *2 (S.D. Fla. Jan. 29, 2021); *see also Hall v. Sargeant*, No. 18-CV-80748, 2018 WL 6019221, at *1 (S.D. Fla. Nov. 16, 2018) ("It is improper for an objecting party to . . . submit papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." (quoting *Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012))). "These kinds of objections are instead reviewed for clear error."[10] *Fibertex Corp.*, 2021 WL 302645, at *2 (citing *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006)).[11] Upon review, the

---

[10]   "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-CV-849-J-34PDB, 2017 WL 2992059, at *1 (M.D. Fla. July 14, 2017) (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005)).

[11]   "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Similarly, "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).

## III.   DISCUSSION

Here, Plaintiff objects to four of the Magistrate Judge's findings in the Report and Recommendation. (*See generally* Doc. 140). Specifically, Plaintiff challenges the findings that: (1) the fee provision of Florida's Anti-SLAPP statute applies in federal court; (2) Defendants are "prevailing parties" under Florida's Anti-SLAPP statute; (3) Plaintiff's claims were entirely without merit; and (4) Defendants' Tweets constitute "free speech in connection with a public issue".[12] (*Id.* at pp. 1–8). The Court will address the arguments in the order they appear in Plaintiff's Objection.

### A.    Whether the Fee Provision of Florida's Anti-SLAPP Statute Applies in Federal Court

In the Report and Recommendation, the Magistrate Judge applied the *Erie* doctrine and determined that the fee provision of Florida's Anti-SLAPP statute affects a substantive right and "does not answer a question already answered by

---

[12]    Two of these objections concern issues that have been previously argued before the Magistrate Judge, whereas the other two objections present new arguments. For the previously argued objections, the Court applies clear error review. *Fibertex Corp.*, 2021 WL 302645, at *2. For the new arguments, while the Court may decline to address these arguments, the Court will nevertheless conduct a *de novo* review. *Williams*, 557 F.3d at 1292.

the Federal Rules of Civil Procedure[.]" (Doc. 139, pp. 6–8). Consequently, the Magistrate Judge concluded that the fee provision of Florida's Anti-SLAPP statute applies in federal court. (*Id.* at p. 8).

For her first objection, Plaintiff makes a new argument that was not previously made to the Magistrate Judge.[13] Plaintiff asserts that the fee provision of Florida's Anti-SLAPP statute does not apply in federal court because the "Eleventh Circuit has 'serious doubts'" that the statute applies. (Doc. 140, pp. 1–3). Further, Plaintiff claims that "the attorney fee provision in the Florida [A]nti-SLAPP statute conflicts with Rule 11 of the Federal Rules of Civil Procedure[.]" (*Id.* at p. 3). However, Plaintiff relies on statements made by an Eleventh Circuit panel during oral arguments held in *Corsi v. Newsmax Media Inc.*, No. 21-10480 (11th Cir. May 19, 2022), wherein the panel questioned whether Florida's Anti-SLAPP statute conflicted with Rule 11 and should be applied in federal court.[14] (*Id.* at p. 2). But, as Defendants correctly note, the Eleventh Circuit ultimately never ruled on this issue in the *Corsi* appeal. (*See* Doc. 141, p. 3; Doc. 142, p. 3); *see also Reed v. Chamblee*, No. 3:22-CV-1059-TJC-PDB, 2024 WL 69570, at *4 n.7 (M.D. Fla. Jan. 5, 2024) (observing that the parties in *Corsi* settled prior to a ruling from the Eleventh Circuit).

---

[13]  As such, the Court has the discretion to decline to address such argument. *See Williams*, 557 F.3d at 1292. Nevertheless, in fairness to Plaintiff, the Court will consider the objection.

[14]  Plaintiff even recognizes in her Objection that "this Court to date has taken the position that the Florida Anti-SLAPP statute creates a substantive right[.]" (Doc. 140, p. 2). Beyond the *Corsi* oral arguments, Plaintiff has not cited to any other cases in this Circuit to suggest that the Florida Anti-SLAPP statute is procedural in nature and inherently conflicts with the Federal Rules of Civil Procedure such that it should not apply in federal court.

Moreover, when confronted with the same issue, several courts in this Circuit have concluded that Florida's Anti-SLAPP statute creates a substantive right, and therefore, applies in federal court. *See Reed*, 2024 WL 69570, at *6 ("The Court follows those cases and finds the fee provision in Florida's anti-SLAPP statute applies."); *Gov't. Emps. Ins. Co. v. Glassco Inc.*, No. 8:19-CV-1950-KKM-JSS, 2021 WL 4391717, at *3–*5 (M.D. Fla. Sept. 24, 2021) ("[T]he Court must read Florida's [A]nti-SLAPP statute as creating a substantive right"); *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1323–24 (S.D. Fla. 2020) ("In sum, the Court finds that Florida's [A]nti-SLAPP fee-shifting provision does not conflict with any of the Federal Rules of Civil Procedure and thus may apply in a federal court exercising diversity jurisdiction.").

The Court agrees with the Magistrate Judge and its sister courts. The purpose of Florida's Anti-SLAPP statute is "to protect the right in Florida to exercise the rights of free speech in connection with public issues" by preventing lawsuits that "are inconsistent" with this right. *See* FLA. STAT. § 768.295(1). The Anti-SLAPP statute facilitates this public policy by providing a "right not to be subject to meritless suits[.]" *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 310 (Fla. 2d DCA 2019). Such a right does not conflict with or answer a question already answered by the Federal Rules of Civil Procedure, and the attorney's fee provision is used as a means of promoting the State's public policy goals. *See Reed*, 2024 WL 69570, at *4–*6; *Bongino*, 477 F. Supp. 3d at 1323–24; *Gov't. Emps. Ins. Co.*, 2021 WL 4391717, at *3–*5; *see also Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-

9

00595-T-24, 2010 WL 3062420, at *1 (M.D. Fla. Aug. 4, 2010) ("Both of these decisions rest on the well-settled principle that the Legislature shifts attorney's fees to accomplish substantive public policy goals.").[15]

As such, the Court agrees with the Magistrate Judge that the fee provision of Florida's Anti-SLAPP statute applies in federal court, and Plaintiff's Objection is overruled as to this issue.

### B.   Whether Defendants are "Prevailing Parties" Under Florida's Anti-SLAPP Statute

Next, Plaintiff objects to the Magistrate Judge's finding that Defendants are "prevailing parties" under Florida's Anti-SLAPP statute for two reasons: (1) the Court made no "express finding" that Plaintiff violated the Anti-SLAPP statute, and (2) the Dismissal Order did not "materially alter" the relationship between the parties because the Court dismissed the case for lack of jurisdiction. (Doc. 140, pp. 3–7). Both arguments are simply attempts to relitigate arguments raised in Plaintiff's responses to Defendants' Motions for attorney's fees. (*Compare id.*, *with* Doc. 132, pp. 7–13, *and* Doc. 133, pp. 8–13). As such, Plaintiff uses the Objection to rehash arguments made to the Magistrate Judge. *See Hall*, 2018 WL 6019221, at *1. The Court accordingly reviews these arguments for clear error. *Fibertex Corp.*, 2021 WL 302645, at *2. While the Court, respectfully, finds that the Magistrate Judge erred by applying the incorrect standard to determine whether

---

[15]   In *Kearny,* the court considered a separate fee provision in a different Florida statute: Section 768.79, Florida Statutes. 2010 WL 3062420, at *1. Nevertheless, the Court finds the analysis concerning what constitutes a "substantive right" applicable to the present case. *Id.*

10

Defendants were "prevailing parties" under the Anti-SLAPP statute, the Court nevertheless concludes that the Magistrate Judge still made an "express finding" such that Defendants should be considered "prevailing parties" under the Anti-SLAPP statute.

As discussed above, under the *Erie* analysis, the Magistrate Judge determined that the fee provision of Florida's Anti-SLAPP statute provided Defendants a substantive right. (*See* Doc. 139, pp. 6–8); *see also* discussion *supra* Section III.A. Accordingly, the Court must apply Florida law to determine the definition of "prevailing party" under Florida's Anti-SLAPP statute.

Under the Anti-SLAPP statute, "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation" of the statute. FLA. STAT. § 768.295(4). However, Florida's Anti-SLAPP statute does not provide a definition for the term "prevailing party." *See id.* Consequently, in the Report and Recommendation, the Magistrate Judge applied the Eleventh Circuit's "material alteration" test to conclude that Defendants were "prevailing parties" under the Anti-SLAPP statute.[16] (Doc. 139, pp. 11–12). However, it was improper to apply the Eleventh Circuit's test for determining a "prevailing party" because the fee provision under Florida's Anti-SLAPP statute creates a substantive right. *See* discussion *supra* Section III.A.

---

[16]   Under Eleventh Circuit precedent, a "prevailing party" is a party who has been "'awarded some relief by the court' that materially 'changes the legal relationship between the parties.'" *Gray v. Koch Foods, Inc.*, 144 F.4th 1298, 1313 (11th Cir. 2025) (quoting *Royal Palm Props., LLC v. Pink Palm Props. LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022)).

11

Thus, in failing to apply Florida law, the Report and Recommendation's analysis of the "prevailing party" issue was in error.

Looking to Florida law, the Florida Supreme Court defines a prevailing party as one who "has in fact prevailed on the significant issues tried before the court." *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992). But, in *Moritz*, the Court's ruling was in the context of a breach of contract action, and not, in a case involving a statutory right to fees. *Id.* at 808–10. As Plaintiff notes in her Objection, an appellate court in Florida has ruled on this issue.[17] (Doc. 140, pp. 4–5). In *Lee v. Animal Aid, Inc.*, the Fourth District Court of Appeals held that a prevailing party under Florida's Anti-SLAPP statute is a party who receives an "express finding by the trial court that the petitioner's suit violated the Anti-SLAPP statute." 388 So. 3d 25, 29–30 (Fla. 4th DCA 2024). An "express finding" requires that the trial court determine plaintiff's claim is (1) "without merit" and (2) "filed primarily because [the defendant] exercised the constitutional right of free speech in connection with a public issue." *Id.* at 30 (citation omitted). Consequently, the *Lee* court found that the defendant was not the "prevailing party" because the defendant "did not have the merits of the Anti-SLAPP claim adjudicated [by] the trial court." *Id.* That being said, Florida's Anti-SLAPP statute does not place a time restraint on when this "express finding" must be made. *See* FLA. STAT. § 768.295(4).

---

[17]   In the absence of a state supreme court decision, "[s]tate law is what the state appellate courts say it is, and we are bound to apply a decision of a state appellate court about state law[.]" *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC,* 881 F.3d 835, 848 (11th Cir. 2018).

Under Florida's Anti-SLAPP statute,

> [a] person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]

FLA. STAT. § 768.295(3). The Anti-SLAPP statute provides defendants a "right to an expeditious resolution of a claim" that violates the statute and suggests that this can be accomplished through filing a motion to dismiss or motion for summary judgment. FLA. STAT. § 768.295(4). While the Anti-SLAPP statute suggests these procedural mechanisms,[18] it notably uses the word "may" rather than "shall." *Id.* Further, it does not explicitly require courts to decide whether a plaintiff violated the Anti-SLAPP statute at the motion to dismiss or summary judgment stage. Indeed, some courts in this Circuit have opted to address whether a plaintiff violated the Anti-SLAPP statute after dismissal and while ruling on a motion for attorney's fees. *See, e.g.*, *Button v. McCawley*, No. 0:24-CV-60911, 2025 WL 3682758, at *1–*3 (S.D. Fla. Dec. 2, 2025) (considering whether the plaintiff violated Florida's Anti-SLAPP statute after the court had already dismissed the

---

[18]  It is worth noting that such procedural mechanisms would likely not apply in federal court based on the *Erie* doctrine. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018) ("A federal court exercising diversity jurisdiction will not apply a state statute if a Federal Rule of Civil Procedure 'answers the question in dispute.'" (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010))). Here, the procedural mechanism for asserting a right to attorney's fees appears to be answered by Federal Rule of Civil Procedure 54(d)(2). *See* FED. R. CIV. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."). Importantly, Rule 54 requires a specific motion for fees, beyond a motion to dismiss or motion for summary judgment, to be filed. *Id.*

13

amended complaint), *report and recommendation adopted*, No. 0:24-CV-60911, 2026 WL 292150 (S.D. Fla. Feb. 4, 2026).

Here, at the motion for fees stage, the Magistrate Judge made an "express finding" that Defendants violated Florida's Anti-SLAPP statute. (*See* Doc. 139, pp. 16–24). The Court agrees with the Magistrate Judge's analysis.

### i.    *Whether Plaintiff's claims were "without merit"*

Concerning the first prong of the "express finding," the Magistrate Judge concluded that, in the Dismissal Order, the "Court found that all of Plaintiff's defamation claims were without merit." (*Id.* at pp. 17–18).  The Court agrees with this finding.

Although Plaintiff asserts that the Court's dismissal was jurisdictionally based, the Court necessarily evaluated the merits of Plaintiff's defamation claims by following the approach of Florida courts applying the long-arm statute.[19] (*See* Doc. 127, pp. 7–8; *see also* Doc. 140, pp. 5–7). In considering Plaintiff's claims for defamation *per se*, the Court found that the Underage Tweet and the Pedophile Tweet did not "concern the Plaintiff," and therefore, Plaintiff failed to state a claim. (Doc. 127, pp. 9–11). As for the Wellness Tweet, the Court likewise found that Plaintiff did not state a claim for defamation *per se* because the Wellness Tweet "contains true statements and a statement of pure opinion." (*Id.* at pp. 11–13).

---

[19]    Under Florida's long-arm statute, before determining whether specific jurisdiction exists, a court must determine "whether the allegations of the complaint state a cause of action." *PVC Windoors*, 598 F.3d at 808 (citation omitted). Accordingly, in the Dismissal Order, the Court addressed the underlying merits of Plaintiff's claim. (Doc. 127, pp. 7–17).

Similarly, as to Plaintiff's claims for defamation *per quod*, the Court held that Plaintiff failed to allege any "special damages" and thus, failed to state a claim for relief. (*Id.* at pp. 13–15). Next, the Court found that Plaintiff's defamation-by-implication claims failed because "Plaintiff [did] not allege the 'literally true facts' to plead a claim for defamation by implication for any of [Defendants' Tweets]." (*Id.* at p. 15 (citations omitted)). Finally, the Court held that because Plaintiff failed to sufficiently plead any claim for defamation, there was "no underlying tort or wrong" and thus, Plaintiff had "no actionable conspiracy [claim]." (*Id.* at p. 17).

In summarizing its analysis in the Dismissal Order, the Court stated that "Plaintiff ultimately fails to state a claim for relief as to any of [Defendants'] Tweets."[20] (*Id.*). Accordingly, it was not clear error for the Magistrate Judge to conclude that Plaintiff's claims were without merit. (Doc. 139, p. 18).

### ii. *Whether Plaintiff sued Defendants "[P]rimarily" because Defendants Have Exercised their First Amendment Rights*

As to the second prong of the "express finding," the Magistrate Judge found that only one of the alleged defamatory statements, the Wellness Tweet, "was

---

[20] As the Magistrate Judge observed, this case is strikingly similar to *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183 (11th Cir. 2003). (Doc. 139, pp. 9–11). In *Davila*, the Eleventh Circuit held that a dismissal "couched . . . in jurisdictional terms" operated as a dismissal on the merits because the district court concluded that it did not have subject matter jurisdiction "only after reaching the very merits" of the plaintiff's claim. 326 F.3d at 1188. The *Davila* court noted that, in dismissing plaintiff's complaint, the district court focused on the "substantive shortcomings in [the plaintiff's] arguments." *Id.* at 1189. Further, the court recognized that "[m]ore than one court of appeals has looked past the linguistic label employed by the district court in determining whether a dismissal transpired on jurisdictional grounds." *Id.* at 1189–90 (collecting cases).

dismissed explicitly because it targeted speech protected by the First Amendment as pure opinion." (Doc. 139, p. 21). Accordingly, the Magistrate Judge concluded that Defendants were only entitled to attorneys' fees as the "prevailing parties" for Plaintiff's claim related to the Wellness Tweet.  (*Id.* at pp. 19–24). Once again, the Court finds that the Magistrate Judge's conclusion concerning the Wellness Tweet was not clearly erroneous.

Under Florida's Anti-SLAPP statute, "free speech in connection with public issues" is defined as:

> . . . any written or oral statement that is protected under applicable law and is made before a governmental entity in connection with an issue under consideration or review by a governmental entity, or is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work.

FLA. STAT. § 768.295(2)(a). As the Magistrate Judge appropriately concluded, to determine whether the Plaintiff sued Defendants "primarily" because Defendants exercised their First Amendment rights, the Court must consider (1) whether the Wellness Tweet is "protected under applicable law" and (2) whether the Wellness Tweet was "made in or in connection with" a medium covered by the statute. (*See* Doc. 139, p. 19).

### a.    Whether Defendants' Speech was "Protected Under Applicable Law"

Florida's Anti-SLAPP statute provides attorney's fees to defendants only if their statements were "protected under applicable law." FLA. STAT. § 768.295(2)(a). The language of the statute specifies that "applicable law" refers to "the First

Amendment of the United States Constitution and s. 5, Art. I. of the [Florida] Constitution." FLA. STAT. § 768.295(1). Generally, defamatory statements are not constitutionally protected under either the United States Constitution or the Florida Constitution. *See Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018). However, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Id.* at 1262. As the Magistrate Judge acknowledged, only the Wellness Tweet was dismissed because it targeted protected speech.[21] (*See* Doc. 139, p. 21; *see also* Doc. 127, pp. 12–13).

The Court held that Plaintiff failed to state a claim for defamation with regard to the Wellness Tweet, specifically, finding "[t]he Wellness Tweet is not actionable under the First Amendment because it contains true statements and a statement of pure opinion." (Doc. 127, p. 11). Because true statements and statements of pure opinion are protected under the First Amendment, the Wellness Tweet was speech "protected under applicable law." FLA. STAT. § 768.295(2)(a); *Turner*, 879 F.3d at 1264; (*see also* Doc. 139, pp. 19–21).

### b.    Whether the Statement was "Made"

As interpreted by Florida state courts, free speech is "made in connection" with public issues if the speech is made in connection with a "mode[] for widely

---

[21]    The Pedophile Tweet and the Underage Tweet were dismissed because the tweets did not "concern the Plaintiff." (Doc. 127, pp. 9–11). Further, Defendants have not adequately demonstrated that the Pedophile Tweet and Underage Tweet should be considered protected speech under Florida's Anti-SLAPP statute. (*See* Doc. 139, pp. 21–22). Accordingly, the Court limits its analysis to the Wellness Tweet.

disseminating protected First Amendment Speech." *Mishiyev v. Davis*, 402 So. 3d 443, 448–49 (Fla. 2d DCA 2025); *see also WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 562 (Fla. 4th DCA 2019) (Gross, J., concurring specially) ("The plain language of the statute shows that the list is non-exclusive and that it protects other similar modes for widely disseminating protected First Amendment speech."). Notably, the court in *Mishiyev* acknowledged that the state legislature did not include a requirement for a special showing of "public issue" for the Anti-SLAPP statute to apply. 402 So. 3d at 448–49 n.5. Instead, the inquiry under the Anti-SLAPP statute focuses on where and how the speech occurred. *Id.*; *see also* FLA. STAT. § 768.295(2)(a).

While never ultimately deciding the issue, the Supreme Court, in dicta, has considered social media platforms, such as Twitter, to be platforms for "disseminating protected First Amendment speech." *See, e.g., Packingham v. North Carolina*, 582 U.S. 98, 105 (2017) ("In short, social media users employ these websites to engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought.'" (citation omitted)); *Moody v. NetChoice, LLC*, 603 U.S. 707, 716 (2024) ("To the extent that social-media platforms create expressive products, they receive the First Amendment's protection.").

In her Objection, Plaintiff merely highlights that the "modes of communication" in the cases cited by the Report and Recommendation are not like the Wellness Tweet, and thus, Plaintiff argues the Wellness Tweet should not be subject to Florida's Anti-SLAPP statute. (Doc. 140, pp. 8–9). However, the Anti-

SLAPP statute explicitly captures more than just traditional print media or news sources. FLA. STAT. § 768.295(2)(a). Moreover, the cases cited by the Magistrate Judge consider statements made on online sources, which are like Twitter and other social media platforms. (Doc. 140, pp. 22–23 (citing *Mishiyev*, 402 So. 3d at 448–49; *WPB Residents for Integrity in Gov't, Inc.*, 284 So. 3d at 562; *Davis v. McKenzie*, No. 16-62499-CIV, 2017 WL 8809359, at *2 (S.D. Fla. Nov. 3, 2017), *report and recommendation adopted*, No. 16-62499-CIV, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018); *McQueen v. Baskin*, 377 So. 3d 170, 176 (Fla. 2d DCA 2023))). Despite Plaintiff's argument, this Court finds that the Wellness Tweet is like these other "modes of communication" in the cases cited by the Magistrate Judge, and, in particular, is analogous to the video blog ("**vlog**") in *McQueen*. (Doc. 140, pp. 8–9); 377 So. 3d at 172–73.

In *McQueen*, the defendant published her commentary of events surrounding the hit Netflix show, *Tiger King*, in a series of vlogs on YouTube. 377 So. 3d at 172. These vlogs discussed the plaintiff in a way the plaintiff claimed was defamatory. *Id.* at 174. Here, the Wellness Tweet is similar to the vlog in *McQueen*. For one, both the Wellness Tweet and the vlog in *McQueen* are inherently expressive. The vlog in *McQueen* was the defendant's "rendition about the events that would later be depicted in *Tiger King*" and were intended "for entertainment purposes only[.]" 377 So. 3d at 172–73. Similarly, the Wellness Tweet provided commentary on Plaintiff's actions. (*See* Doc. 105-5). Indeed, the Wellness Tweet includes Defendants' opinion that "this chick is coming undone." (*Id.*).

Additionally, the Wellness Tweet was made available to the public through an online community, just as the defendant's vlog in *McQueen* was made available to an online community on her YouTube channel and the Big Cat Rescue website. (Doc. 140, p. 2); 377 So. 3d at 172–73. Notably, Defendants' online persona "Beeism" has approximately 80,000 followers much like the defendant in *McQueen* used public channels such as YouTube and Big Cat Rescue's website to disseminate her vlogs.[22] (Doc. 107, ¶¶ 17, 24); *see also* 377 So. 3d at 172–73. The Court finds this case to be particularly illuminating in defining the bounds of what "modes of communication" are subject to Florida's Anti-SLAPP statute. Regardless, Plaintiff does not provide any case law, or any other authority, to show that Twitter or other forms of social media are not subject to Florida's Anti-SLAPP statute.

In sum, the Court does not find Plaintiff's Objection sufficient to reject the Magistrate Judge's conclusion that Defendants' Wellness Tweet is subject to Florida's Anti-SLAPP statute. (Doc. 139, p. 23). Moreover, although it was

---

[22] Ultimately, the *McQueen* court found that the plaintiff had adequately alleged statements that, if proven, could be defamatory as a matter of law, thus the Anti-SLAPP statute did not apply. 377 So. 3d at 178. Further, the McQueen court determined that the defendant was not a media defendant pursuant to Section 770.71 of the Florida Statutes. *Id.* at 178–80. Nevertheless, these facts are distinguishable from the present case because, here, the Court found that Plaintiff did not adequately plead any cause of action for defamation. (*See* Doc. 127, p. 17). Additionally, Section 770.71 of the Florida Statutes explicitly mentions sources that are traditional news media, whereas Section 768.295 of the Florida Statutes goes beyond traditional media and includes expressive works such as "play[s], movie[s], television program[s]," "audiovisual work[s]," and "musical work[s]." *Compare* FLA. STAT. § 770.71, *with* FLA. STAT. § 768.295(2)(a). Moreover, Defendants do not contend that they are "media defendants" subject to Section 770.71 of the Florida Statutes in the present action.

erroneous to use the "material alteration" test to determine the "prevailing party" status of Defendants, the Magistrate Judge still made the requisite "express finding" such that Defendants are "prevailing parties" under Florida's Anti-SLAPP statute. (*Id.* at pp. 16–24). Accordingly, Plaintiff's Objection on this issue is overruled.

## C. Whether Plaintiff's Claims Lacked Merit Entirely

For her next objection, Plaintiff rehashes her earlier arguments that her claims were not entirely meritless because, at an earlier stage of litigation, the Magistrate Judge found her claims to be "not without merit."[23] (*Compare* Doc. 140, pp. 7–8, *with* Doc. 132, pp. 2–6, 16, *and* Doc. 133, pp. 2–4, 17).

As an initial point, the Court is not completely bound by its previous decisions in an earlier stage of a case. *See Robinson v. Parrish*, 720 F.2d 1548, 1550 (11th Cir. 1983) ("New developments or further research often will convince a district court that it erred in an earlier ruling, or the court may simply change its mind."). While "[u]nder the law of the case doctrine, 'an issue decided at one stage of a case is binding at later stages of the same case[,]'" the "law of the case" only applies when a final judgment is entered. *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288–89 (11th Cir. 2009) (quoting *United States v. Escobar–Urrego*, 110 F.3d 1556, 1560 (11th Cir.1997)). Here, the Motion to Quash was not a final judgment, and thus, in its Dismissal Order, the Court was permitted to review

---

[23] Specifically, Plaintiff cites to the Magistrate Judge's Order on Defendant Jane Doe's Motion to Quash, wherein the Magistrate Judge found that Florida's Anti-SLAPP statute did not apply to the present case. (Doc. 140, pp. 7–8 (citing Doc. 16, p. 5)).

its initial holding at the motion to dismiss stage and find that Plaintiff failed to state a *prima facie* case for defamation. (*See* Doc. 127, pp. 10–17).

Furthermore, Plaintiff does not provide any new case law or argument to explain why the Report and Recommendation was clearly erroneous on this issue. Indeed, this Court reviewed the Magistrate Judge's analysis and agrees with its conclusion that the Dismissal Order was on the merits. *See* discussion *supra* Section III.B.i. Accordingly, the Court is not "left with the definite and firm conviction that a mistake has been committed" and Plaintiff's Objection is overruled. *Lanard Toys Ltd.*, 2017 WL 2992059, at *1 (citation omitted).

### D. Whether Defendants' Tweets Constitute "Free Speech in Connection with a Public Issue"

In her final objection, Plaintiff disputes the Magistrate Judge's conclusion that "[s]tatements made on social media, such as Twitter, appear to fall within the ambit of the Anti-SLAPP law." (Doc. 139, p. 23; Doc. 140, pp. 8–10). Because the Court addressed this argument in its analysis of whether the Wellness Tweet was made in connection with a public issue, the Court does not need to discuss this objection separately. *See* discussion *supra* Section III.B.ii.b. For the reasons stated above, Plaintiff's Objection is overruled.

### IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED AND ADJUDGED** as follows:

22

1. Magistrate Judge Nathan W. Hill's Report and Recommendation (Doc. 139), filed on December 9, 2025, is **ADOPTED IN PART** and **MODIFIED IN PART**.

    a. The Court **MODIFIIES** the Report and Recommendation's analysis of Defendants as "prevailing parties" under Florida's Anti-SLAPP statute by supplementing it with the Court's analysis of this issue in Section III of this Order.

    b. The Court **ADOPTS** the Report and Recommendation in all other respects.

2. Plaintiff's Objection (Doc. 140) is **OVERRULED**.

3. Defendant Frisch's Motion for Attorneys' Fees (Doc. 129) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE IN PART**.

    a. Defendant Frisch's Motion (Doc. 129) is **GRANTED IN PART** to the extent that it seeks entitlement to attorney's fees under Florida's Anti-SLAPP statute, FLA. STAT. § 768.295, with respect to claims arising out of the "Wellness Tweet"; and

    b. Defendant Frisch's Motion (Doc. 129) is **DENIED WITHOUT PREJUDICE IN PART** to the extent that it seeks to impose joint and several liability on Plaintiff and Plaintiff's counsel; and

c.   Defendant Frisch's Motion (Doc. 129) is **DENIED** in all other respects.

4.   Defendant De La Rosa's Motion for Attorneys' Fees (Doc. 131) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE IN PART**.

a.   Defendant De La Rosa's Motion (Doc. 131) is **GRANTED IN PART** to the extent that it seeks entitlement to attorney's fees under Florida's Anti-SLAPP statute, FLA. STAT. § 768.295, with respect to claims arising out of the "Wellness Tweet"; and

b.   Defendant De La Rosa's Motion (Doc. 131) is **DENIED WITHOUT PREJUDICE IN PART** to the extent that it seeks to impose joint and several liability on Plaintiff and Plaintiff's counsel; and

c.   Defendant De La Rosa's Motion (Doc. 131) is **DENIED** in all other respects.

5.   The Court **RESERVES** jurisdiction to determine the amount of attorney's fees owed to Defendants.

**DONE AND ORDERED** in Orlando, Florida on March 30, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

24

Copies furnished to:

Counsel of Record
Unrepresented Parties